# Richmond

·Fallon Florist, Inc., et als. v. City of Roanoke.
Barrow-Penn & Company, Inc., et als. v.
City of Roanoke.
Patrick Henry Operating Company, Inc., et als. v.
City of Roanoke.

March 13, 1950.

Record Nos. 3593, 3594, 3596.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan
and Miller, JJ.

The opinion states the case.

*Hazlegrove, Shackelford & Carr* and *Earl A. Fitzpatrick*, for appellants, Fallon Florist, Inc., et als.

*H. M. Moomaw*, for appellants, Barrow-Penn & Co., Inc., et als.

*Woodrum & Staples* and *Hazlegrove, Shackelford & Carr*, for appellants, Patrick Henry Operating Co., Inc., et als.

*Randolph G. Whittle* and *James N. Kincanon*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

These appeals involve the validity of certain ordinances enacted by the council of the city of Roanoke imposing taxes upon three types of business transactions conducted within the city. Each of the appeals is from a decree entered by the lower court in a declaratory judgment proceeding[1] sustaining the validity of the ordinance and the tax thereby imposed.

The Fallon Florist case involves the validity of a tax "imposed upon each and every purchaser of any floral design" within the city, at the rate of 5% "of the price contracted to be paid for the same."

The Barrow-Penn & Company case involves the validity of a tax "upon each and every sale of cigarettes" within the city at the rate of one cent for each ten, or fractional number of ten, cigarettes so sold.

The Patrick Henry Operating Company case involves the validity of a tax of 5% "of the total amount paid for room rental by or for any * * * transient to any hotel" within the city.

Under the ordinances the duty of collecting and reporting to the designated officials of the city the taxes on floral designs and on cigarettes sold within the city is placed upon the respective sellers of these articles, and the corresponding duty with respect to the hotel room rental tax is imposed upon the individual, corporation, company, association, firm, etc., receiving payment for such rental. Penalties are prescribed for the failure to comply with the terms and provisions of the ordinances. Such other provisions of the ordinances as may be pertinent to the questions raised will be later referred to.

The City of Roanoke concedes that it possesses only such power to levy, assess and collect taxes as has been delegated to and conferred upon it by the General Assembly in accordance with the Constitution of this State. But it con-

---

[1] Michie's Code of 1942, § 6140a *ff*; Code of 1950, § 8-578 *ff*.

tends, and the lower court held, that the necessary power
and authority were delegated to it by section 2 of its
charter[2] which confers upon it the general power of taxation
in this language:

"Section 2. In addition to the powers mentioned in the
preceding section, the said city shall have power:

"First. To raise annually by taxes and assessments in said
city such sums of money as the council hereinafter pro-
vided for shall deem necessary for the purposes of said city,
and in such manner as said council shall deem expedient,
in accordance with the Constitution and laws of this State
and of the United States; provided, however, that it shall
impose no tax on the bonds of said city; and provided,
further, that said tax rate shall not exceed the sum of two
dollars and fifty cents ($2.50) on the one hundred dollars
of assessed value of real and personal property in this city
except for providing for the payment of the principal and
interest on any non-revenue bonds hereafter issued and
approved by a vote of the freeholders, or for any bonds
issued to refund the same. The maximum rate of two
dollars and fifty cents ($2.50) shall be construed to include
any and all levies which might otherwise be levied under
the provisions of sections two hundred and ninety-three,
two hundred and ninety-four and two hundred and ninety-
five of the Tax Code of Virginia; and the authority to
exceed the two dollars and fifty cents ($2.50) maximum
rate shall not be construed to authorize the council to ex-
ceed the same to pay principal or interest on non-revenue
bonds or on any refunding bonds issued to refund bonds
originally issued prior to January first, nineteen hundred
and forty-two."

The appellants make both concerted and separate attacks
on this position.

First, they say, sections 63, (5) and 64 of the Constitution
prohibit the General Assembly from delegating to cities the
authority to assess and collect taxes except by general laws

---

[2] Acts 1924, ch. 473, p. 720, as amended by Acts 1942, ch. 483, p. 958.

conferring like powers on all municipalities throughout the Commonwealth, and since there is no such general law authorizing municipalities to impose the taxes with which we are concerned, the charter provision relied on, being a special or local law, is ineffectual to confer such authority upon the city of Roanoke.

Section 63 of the Constitution provides in part:

"The General Assembly shall not enact any local, special or private law in the following cases:

\* \* \* \* \* \* \*

"5. For the assessment and collection of taxes, except as to animals which the General Assembly may deem dangerous to the farming interests."

Item 5 is one of twenty subjects within the inhibited class.

Section 64 provides in part: "In all cases enumerated in the last section, and in every other case which, in its judgment, may be provided for by general laws, the General Assembly shall enact general laws."

The city concedes that the General Assembly has enacted no general law which grants to municipalities the specific authority to impose the particular taxes here involved. It also concedes that the charter provision relied on is a special or local law within the meaning of section 63. But it insists that section 117 of the Constitution gives to the General Assembly the necessary authority to confer upon a municipality the power of taxation by a provision in its charter.

We need not stop to consider whether such a provision as that under consideration, which is usually found in the charter of a city or town and grants to it the broad power to impose such taxes as may be necessary for its governmental functions, is a law "for the assessment and collection of taxes" within the meaning of section 63 of the Constitution.[3] There is, we think, a complete answer to appellants'

[3] For a discussion of the subject, see Cooley on Taxation, 4th Ed., Vol. II, § 532, pp. 116, 117; 51 Am. Jur., Taxation, § 126, pp. 170-1; *Simon* v. *Northup*, 27 Or. 487, 40 P. 560, 563, 30 L. R. A. 171; *Kroegel* v. *Whyte*, 62 Fla. 527, 56 So. 498; *Cauble* v. *Beemer*, 64 Nev. 77, 177 P. (2d) 677, 682, 683.

argument in section 117 (a) of the Constitution, as interpreted by the previous decisions of this court. This section provides in part: "General laws for the organization and government of cities and towns shall be enacted by the General Assembly, and no special act shall be passed in relation thereto, except in the manner provided in article four of this Constitution, and then only by a recorded vote of two-thirds of the members elected to each house. * * *"

In *Portsmouth* v. *Weiss*, 145 Va. 94, 133 S. E. 781, an attack was made on a provision in the charter of the city of Portsmouth which required a written statement of the particulars of an accident to be filed with the city manager within a specified time as a condition precedent to the right to sue the city because of the negligence of its officers or employees. It was there contended that the charter provision was in contravention of section 63, paragraph 3, of the Constitution, which forbids the enactment of a "local, special or private law" "regulating the practice in, or the jurisdiction of, or changing the rules of evidence in any judicial proceedings or inquiry before the courts or other tribunals."

In an opinion by Judge Burks this court held that the charter provision was valid. The opinion points out that sections 63 and 64 must be read in connection with section 117, that the latter section was designed to enable municipal corporations, because of their peculiar problems, "to care for their special interests," and that, "Usually this could be done by general laws applicable to all municipal corporations, but the Convention realized that there might be cases where it would be desirable to confer special powers, or special privileges, on one not needed or required by all, and hence we find it provided by section 117 of the Constitution that 'general laws for the organization and government of cities and towns shall be enacted by the General Assembly, and no special act shall be passed in relation thereto, except in the manner provided in article four of this Constitution,

and then only by a recorded vote of two-thirds of the members elected to each house.'" (145 Va., at page 106.)

Continuing, that opinion says: "* * * If section 63 of the Constitution, forbidding the passage of any local, special or private law regulating the practice in any judicial proceeding, is apparently in conflict with section 117, the conflict is more apparent than real. Section 63 must be held to apply to cases not otherwise specially provided for. It cannot be supposed that the Convention intended to impose upon the legislature any other restraints in the enactment or amendment of charters of municipal corporations than those imposed by section 117. It was dealing with that specific subject, and threw around it all the safeguards it deemed necessary. If these were complied with, the power of the legislature in reference thereto was unrestrained. The language of section 63 is general, that of 117 is specific. The general must give way to the specific, and section 63 applied to cases not otherwise specifically provided [for]. In this way the two sections are made to harmonize, and the apparent repugnancy is avoided." (145 Va., at pages 107, 108.)

The opinion further points out that under a similar attack the validity of special charter provisions was upheld in *Miller* v. *Pulaski,* 109 Va. 137, 63 S. E. 880, 22 L. R. A. (N. S.) 552, and *Narrows* v. *Board of Sup'rs*, 128 Va. 572, 105 S. E. 82. "The last two mentioned cases," it is said, "are authority for the proposition that special charters of municipal corporations or amendments thereof conferring rights and powers different from and in addition to those conferred by general statutes are authorized by the Constitution when enacted in conformity with article IV and section 117 of the Constitution; that when the enactment is published by the State as a statute, there is at least a *prima facie* presumption, in the absence of evidence to the contrary, that the charter, or amendment thereof, was enacted in the manner required by the Constitution; and

that the rights and powers conferred are within the legislative power to grant." (145 Va., at page 107.)

Upon the authority of the cases just referred to the same principles were applied and reaffirmed in *Ransone* v. *Craft*, 161 Va. 332, 170 S. E. 610. In that case the validity of an ordinance enacted by the council of the city of Roanoke regulating the operation of barber and beauty shops was attacked on the ground that the General Assembly had passed no general law empowering municipalities to adopt such regulations, as required by section 65 of the Constitution. In an opinion by Mr. Justice Hudgins, now Chief Justice of this court, it was held that inasmuch as the city had been empowered by the provisions of its charter, enacted in accordance with article IV and section 117 of the Constitution, to enact such an ordinance, the ordinance was valid notwithstanding the fact that the General Assembly had passed no general statute on the subject.

We adhere to what was said in these opinions with respect to the proper interpretation and application of these constitutional provisions.

When section 117 (a) authorizes, as it does, the General Assembly to enact special laws for the "organization and government of cities and towns," provided this is done in the manner therein required, such authority includes the power to confer upon such localities the right to assess and collect taxes for the performance of their governmental functions, for the power of taxation is necessary to the existence of a local government. Without the legislative authority to grant such power the provision for the "organization and government" of municipalities would fall short of its purpose and meaning.

Since there is no showing that the charter provision here under review was not enacted in the manner required by the Constitution, we presume that it was, and hence it is a valid legislative grant of the power of taxation.

It may be observed in passing that the view we have taken is in accord with the legislative interpretation of these sec-

tions of the Constitution. The General Assembly has repeatedly, especially in recent years, enacted special laws granting to various municipalities, by provisions in their charters, special powers suitable to their particular needs, some of which fall within the classes of inhibited special legislation detailed in section 63, paragraphs (1) to (20), both inclusive. To be specific, during recent sessions the General Assembly has enacted charter provisions giving certain cities and towns the power to levy taxes on charges for admissions to places of amusement and entertainment[4] and on public utility charges.[5]

While such legislative interpretation is not binding on us it is entitled to much weight. *Harrison* v. *Barksdale,* 127 Va. 180, 207, 102 S. E. 789; *Board of Sup'rs* v. *Cox,* 155 Va. 687, 706, 156 S. E. 755; *Roanoke* v. *Michael's Bakery Corp.,* 180 Va. 132, 143, 21 S. E. (2d) 788, 793.

Next, the appellants say that the charter provision relied on is not a sufficient grant of authority to warrant the imposition of these particular taxes.

It will be observed that the grant of authority in section 2 of the charter, which has already been set out in full, is in this broad language:

"In addition to the powers mentioned in the preceding section, the said city *shall have power*:

"First. To *raise annually by taxes* and assessments in said city *such sums of money as the council* hereinafter provided for *shall deem necessary for the purposes of said city, and in such manner as said council shall deem expedient,* in

---

[4] Acts 1946, ch. 98, p. 131; Acts 1947, Ex. Sess., ch. 3, p. 13; *Id.,* ch. 30, p. 72; *Id.,* ch. 51, p. 100; *Id.,* ch. 67, p. 122; *Id.,* ch. 76, p. 143; Acts 1948, ch. 74, p. 122; *Id.,* ch. 220, p. 453; *Id.,* ch. 240, p. 475; *Id.,* ch. 484, p. 965.

[5] Acts 1948, ch. 4, p. 48; *Id.,* ch. 34, p. 76; *Id.,* ch. 35, p. 76; *Id.,* ch. 182, p. 414.

See also, similar and other grants of power in the new charter for the city of Richmond. Acts 1948, ch. 116, pp. 175, 177, 178.

The evident purpose of these special acts and those referred to in the preceding note was to settle the question which had been raised as to the authority of a municipality to impose such taxes without an express grant of power. See note 6, *post.*

accordance with the Constitution and laws of this State and of the United States; * * *." (Emphasis added.)

Clearly, this language was designed to confer upon the city the general power of taxation,—that is, the power to levy and impose such taxes as the legislative body of the city may deem necessary for its governmental functions,—except only as that power is limited by the Constitution and laws of this State and of the United States.

In *Ould* v. *Richmond*, 23 Gratt. (64 Va.) 464, 468, 14 Am. Rep. 139, in construing legally similar language in the charter of the city of Richmond, this court said: "This clause confers the general power of taxation, except only as it may be limited by the laws of the State and the United States; and includes all powers and subjects of taxation. And as to the manner of laying the tax, the council is invested with full discretion."

In *Norfolk* v. *Norfolk Landmark Pub. Co.*, 95 Va. 564, 567, 28 S. E. 959, a similar interpretation was placed upon the general power of taxation which was granted to the city of Norfolk by a section in its charter in language almost identical with that found in the Roanoke charter. In the latter case this court said: "When the legislature confers upon a municipality the general power of taxation, it grants all the power possessed by itself in respect to the imposition of taxes; and the city can then impose taxes, in its discretion, upon all subjects within its jurisdiction not witheld from taxation by the legislature, whether they be taxed by the State or not." (95 Va., at page 567.)

These principles have been repeatedly reaffirmed by this court, the most recent case on the subject being that of *Fredericksburg* v. *Sanitary Grocery Co.*, 168 Va. 57, 68, 69, 190 S. E. 318, 323, 110 A. L. R. 1195.

It is true that each of these cases involved the validity of a license tax which the cities were empowered to impose by general law. But that does not weaken or impair the force of what was there said with respect to the scope of the grant to a municipality of the general power of taxation.

In this connection it is interesting to note that in the following recent cases ordinances enacted by municipalities under the general power of taxation delegated to them, imposing taxes on the purchase of articles and commodities made therein, have been upheld: *Heriot* v. *Pensacola*, 108 Fla. 480, 146 So. 654; *Blauner's, Inc.* v. *Philadelphia*, 330 Pa. 342, 198 A. 889; *Mouledoux* v. *Maestri*, 197 La. 525, 2 So. (2d) 11.

The appellants' argument that these are new and revolutionary taxes which the legislature itself has refused to impose throughout the State, and which the city until recently has not imposed, is beside the point. We are here concerned with the *power* and not the *policy* of taxation. The fact that a legislative body, whether it be the General Assembly or local legislature, has failed to exercise its lawful power of taxation cannot be interpreted as a lack of such authority.

Nor is the failure of the General Assembly to impose a similar tax to be taken as a lack of authority in the municipality to do so, for as Judge Keith pointed out in *Norfolk* v. *Griffith-Powell Co.*, 102 Va. 115, 121, 122, 45 S. E. 889: "What the Legislature may lawfully do, it may do as to it seems best, and when it seems best. Its policy then is an uncertain, its power a certain, quantity; and so with its delegated authority. If it confers the power of taxation upon a municipal corporation, the power so delegated continues until it is recalled, and the mere failure of the Legislature to exercise a part of its power cannot be construed as an impairment or diminution of that which it had lawfully delegated to a subordinate agency of taxation, for the ideas of propriety, expediency, and policy which influence all schemes of taxation may not be identical in the municipal councils and the Legislature of the State."

As the General Assembly is the judge of what taxes are necessary and expedient to meet the needs of the Commonwealth, so, too, is the local legislature the judge of what taxes may be levied within the limits of its delegated authority.

The point is made that the ordinances imposing these taxes are invalid under the holding in *Wytheville* v. *Johnson*, 108 Va. 589, 62 S. E. 328, 128 Am. St. Rep. 981, 18 L. R. A. (N. S.) 960. In that case this court held that in the absence of an express grant the town lacked the necessary authority to levy a collateral inheritance tax, and that such grant was not found either in the general law or in the charter provision giving the town the general power of taxation.

The general law (Pollard's Code of Virginia, 1904, sec. 1043) required the council of every city and town to make up a budget showing all sums "which ought to be paid within one year," and in order to raise such amount, to order a levy "in addition to what may be received for licenses and from other sources." It permitted a levy to be made, among other things, "upon any property therein, and on such other subjects as may at the time be assessed with State taxes against persons residing therein."

A section in the town charter provided: "For the execution of its powers and duties, the council may raise taxes annually by assessments in said town on all subjects taxable by the State, such sums of money as they may deem necessary to defray the expenses of same, and in such manner as they may deem expedient (in accordance with the laws of the State and the United States * * *)."

In holding that the town lacked the necessary grant of authority to impose a collateral inheritance tax, this court, after approving its former holding in *Schoolfield* v. *Lynchburg*, 78 Va. 366, said:

"It is apparent that section 1043 and the charter of the town of Wytheville apply only to the ordinary annually recurring tax on property and other subjects of taxation, and not to sporadic subjects which, though connected with the transmission and enjoyment of property, are casual in their nature and not recurrent. It was to the former subjects of taxation that the court had reference in *Ould* v. *Richmond*, 23 Gratt. (64 Va.) 464, 14 Am. Rep. 139, and *Norfolk* v. *Norfolk Landmark Pub. Co.*, 95 Va. 564, 28

S. E. 959, and cases of that type, and not to a *special exaction* imposed by the State upon the recipient of a collateral inheritance. It would seem clear from the authorities that the power of a municipality to attach such burden to the devolution of property can only be conferred by express grant." (108 Va., at page 593.)

The appellants say that by the same reasoning the charter provision giving to the city of Roanoke the power "to raise annually by taxes and assessments" such moneys as the council may deem necessary for its governmental functions, excludes the power and authority to impose the taxes with which we are now concerned, for it is said, none of these is "the ordinary annually recurring tax on property and other subjects of taxation," but on the contrary, all are taxes on "sporadic subjects" and are "casual in their nature and not recurrent."

What was said in the *Wytheville Case* should, of course, be read in connection with its peculiar facts. The opinion discloses that Mrs. Johnson, a resident of the town, died on June 21, 1907, and shortly thereafter her will was admitted to probate. The collateral inheritance tax imposed on behalf of the State was paid. On August 2, 1907, more than a month after the death of the testatrix, the town council passed an ordinance levying a collateral inheritance tax and declared that it should be retroactive and take effect from January 1, 1907.

Thus, the tax there levied, while general in its terms, was sought to be imposed upon an isolated subject of taxation, a "special exaction" upon what was evidently the transmission of a considerable estate. It was, as the opinion characterized it, a "sporadic" subject of taxation, "casual" in its nature, "not recurrent," and not within the grant of the power of taxation found either in the general statute or in the charter provision.

It is true that the language used in the opinion is applicable to all collateral inheritance taxes and sufficiently broad to

exclude them from the general power of taxation sought to be exercised by municipalities under less startling circumstances.

■ But the reasoning by which such a sporadic and nonrecurrent tax was there excluded is not applicable here. The taxes with which we are concerned are not imposed upon "sporadic subjects." They are privilege taxes levied on three types of business transactions which frequently occur and recur in the business life of an urban community. They are quite susceptible of an estimate of annual yield, although like license taxes, they may vary from time to time according to the exercise of the privileges on which they are imposed.

Since the *Wytheville Case* was decided in 1908, neither it nor the *Schoolfield Case* has been cited or applied by this court on this point. Subsequently there has been a marked change in the concept of the taxable needs and sources of revenue for both State and municipal purposes. Due to their increasing needs, both have been forced to seek or tap new sources of revenue. The draftsmen of the charter of the city of Roanoke anticipated this in obtaining from the General Assembly a broad grant of power of general taxation.

■ We are of opinion that the language used in the charter which authorizes the city "to raise annually by taxes and assessments" was not intended to limit the power of taxation to license and property taxes which are assessed on an annual basis. The delegated power is not "to *assess* annually" certain classes of property, but more broadly "to *raise* annually" by taxes and assessments the needed revenues. Clearly, the language in the charter was designed to authorize the city to raise by taxes from year to year such sums as may be required for its governmental needs.

Under a similar grant of power in the charter of the city of Norfolk (Acts 1918, ch. 34, pp. 31, 33), and notwithstanding what was said in the *Wytheville Case*, the Court of Law and Chancery of the city of Norfolk held that that mu-

nicipality had the power to levy a tax on admissions to places of amusement.[6]

We are not impressed with the argument advanced in the florist briefs that the 1942 amendment to section 2 of the Roanoke charter (Acts 1942, ch. 483, p. 958), which limited the rate of taxation to $2.50 on the $100 of assessed value of real and personal property, was intended to limit the city's power of taxation to these subjects.

The appellants next claim that the city is without authority to levy or impose these taxes because, they say, the power of taxation granted to it in its charter has been limited by the general statutes enacted for the segregation of property for taxation between the State and the localities, and that such segregation statutes do not permit the imposition of these taxes by the localities.

Section 168 of the Constitution provides in part as follows: "* * * The General Assembly may define and classify taxable subjects, and, except as to classes of property herein expressly segregated for either State or local taxation, the General Assembly may segregate the several classes of property so as to specify and determine upon what subjects State taxes, and upon what subjects local taxes may be levied."

Section 171 of the Constitution provides as follows: "No State property tax for State purposes shall be levied on real estate or tangible personal property, except the rolling stock of public service corporations. Real estate and tangible personal property, except the rolling stock of public service corporations, are hereby segregated for, and made subject to, local taxation only, and shall be assessed or reassessed for local taxation in such manner and at such times as the General Assembly has heretofore prescribed, or may hereafter prescribe, by general laws."

It will be observed that neither of these sections

---

[6] See *Loew's Theater, etc., Corp.* v. *Norfolk* (1946), unreported.

A petition for appeal was filed in this case but was withdrawn when the city obtained an amendment to its charter specifically authorizing the levy of this tax. (Acts 1946, ch. 98, p. 131.)

segregates or allocates any property or subject to the State for tax purposes. Section 171 is a restraint on the imposition of State taxes on the properties which are thereby segregated to the localities for taxation by the latter.

Pursuant to these constitutional provisions the General Assembly enacted the following segregation statutes which are found in the Tax Code:

"Sec. 7. All taxable real estate and all taxable tangible personal property and the tangible personal property of public service corporations (except rolling stock of corporations operating railroads by steam), and also the capital of merchants are hereby segregated and made subject to local taxation only. * * *" (Code 1950, sec. 58-9.)

"Sec. 8. Insurance taxes, licenses on insurance companies, taxable intangible personal property, rolling stock of all corporations operating railroads by steam, and all other classes of property not hereinbefore specifically enumerated in this chapter, are hereby segregated and made subject to State taxation only. The capital of merchants shall not be subject to State taxation, but may be taxed locally, as provided by the preceding section." (Code 1950, sec. 58-10.)

"Sec. 35. Incomes having been segregated for State taxation only, no county, city, town, or other political subdivision of this State shall impose any tax or levy upon incomes." (Code 1950, sec. 58-80.)

In brief, the argument of the appellants is that the effect of section 171 of the Constitution and sections 7 and 8 of the Tax Code is to allocate to the localities for taxation only the subjects which are specifically mentioned in section 171 of the Constitution and section 7 of the Tax Code, and to allocate all other subjects of taxation to the State for taxation by it alone.

The answer to this argument is, we think, found in the wording of section 8 of the Tax Code. It will be observed that the reservation to the State is of "all other *classes of property* not hereinbefore specifically enumerated in this

chapter"—that is, in section 7—and not "all other *subjects of taxation*" which is a broader term.

The taxes here under review are not property taxes, but are excise or privilege taxes and hence are not included in the reservation to the State.

The correctness of this interpretation is strengthened by the fact that the Tax Code permits the localities to impose numerous license, occupation and privilege taxes, none of which is specifically mentioned in section 7 of the Tax Code, and which under the argument of the appellants would be subject to State taxation only.

Moreover, as has been pointed out, in recent years the General Assembly has by appropriate provisions in their charters authorized a number of cities and towns to impose taxes on admissions to places of amusement, on utility charges, and on kindred subjects of taxation.[7]

Our view of the matter is in accord with the ruling of the State Tax Commissioner that such taxes on admissions are not within the "classes of property" which have been reserved or allocated to the State for taxation by it alone.[8]

---

[7] See notes 4 and 5, *supra*.

[8] In a letter from the State Tax Commissioner to the city attorney of the city of Norfolk, dated December 18, 1945, and filed with the papers in the case of *Loew's Theater, etc., Corp.* v. *Norfolk* (note 6, *supra*), the commissioner wrote in part:

"An admissions tax, * * * is not a property tax or a tax on property. Section 171 of the Virginia Constitution is expressly restricted to property and property taxes. Section 7 of the Tax Code of Virginia segregates real estate and tangible personal property for local taxation only. It also segregates another class of property, to-wit, the capital of merchants, for local taxation only. Section 8 of the Tax Code segregates for State taxation only, insurance taxes, licenses on insurance companies, taxable intangible personal property, rolling stock of all corporations operating railroads by steam, and all other classes of property not mentioned in section 7. * * *

"It necessarily follows that admissions taxes are not segregated to the State by section 8 of the Tax Code, because there is no language in section 8 which is broad enough to do it. Admissions taxes are not contained in the enumeration in section 8 and the general language is restricted to classes of property not enumerated in section 7. * * *

" * * * Section 8 does not mean that all *subjects of taxation* except those enumerated in section 7 are segregated for State taxation only. It does

We are of opinion that the segregation statutes referred to do not prevent the city from imposing the taxes here involved.

■ There is, we think, no merit in the contention that the florist and hotel room rental tax ordinances are invalid in that they require taxes to be collected by the person who sells a floral design, or receives the amount paid for a hotel room rental, as the case may be, and by him transmitted to the proper city official. The argument is that these provisions of the ordinances violate section 37 of the city charter which imposes upon the city treasurer the duty to "collect and receive all city taxes, levies," etc., and that the authority to collect taxes by any other agency requires the express sanction of the General Assembly.

The short answer to this argument is that the power to impose a tax carries with it the power to provide practical means for its collection, such as are found in the ordinances. It is, of course, impossible that the city treasurer, or one of his deputies, be present at each of the transactions contemplated in the ordinances and collect the taxes thereon imposed. Consequently, a layman in each instance is made the agent by which the particular tax is collected from the purchaser of a floral design, or the renter of a hotel room, and by him transmitted to the city treasurer who thereby becomes the custodian of such funds, as is required by this section of the charter. The ordinances relieve the city treasurer of no duties or obligations imposed upon him by the city charter or the general law.

The validity of a like provision for the collection of a similar municipal tax, authorized under a similar grant of power, was upheld in *Blauner's, Inc.* v. *Philadelphia, supra.*

On behalf of Barrow-Penn & Company and others similarly situated, it is argued that the ordinance imposing a tax

mean that all *classes of property* except those enumerated in section 7 are segregated for State taxation only. Admissions taxes are not property taxes, and as above stated, are not segregated to the State by section 8, nor are they segregated to the State by any constitutional provision or any statutory provision." (Emphasis added.)

on cigarettes vests in the city auditor "arbitrary and unlawful powers of legislative and semi-judicial character."

The contention is that under the terms of the ordinance a dealer in cigarettes is required to buy and affix stamps to each package of cigarettes sold; that in affixing the stamps the dealer is required to act as the agent of the auditor; and that inasmuch as the auditor is permitted to appoint such additional agents as "he may deem necessary" for the purpose, this gives him the arbitrary power to grant the right to sell to certain dealers and refuse it to others.

This argument overlooks the plain language of the ordinance which is that, *"Every dealer in the city shall have the right to buy and affix such stamps as an agent,* and the auditor may appoint, in addition to local dealers, such other persons as agents for the purpose of buying and affixing stamps as he may deem necessary; * * * ." (Emphasis added.) The auditor is not given the authority to grant the privilege to one and deny it to another. He is merely given the duty of appointing others "in addition to local dealers" as the proper administration of the ordinance may require.

Nor is the power given to the auditor to approve the surety on the bond of $100 required of the dealer an unlawful delegation to the auditor of duties which are "semi-judicial" in character.

A final contention on behalf of the cigarette dealers is that the title of the ordinance is not sufficiently broad, as required by section 12 of the city charter, to include the objects and purposes therein set forth.

The title of the ordinance, in so far as it is here pertinent, reads as follows:

"AN ORDINANCE levying and imposing a tax on every sale at retail within the city of Roanoke of any cigarettes, as in this ordinance defined; defining certain words and phrases used in this ordinance, fixing the rate and amount of such tax and providing for the payment thereof to the city by every seller of any such cigarettes; * * * defining violations

of the provisions of said ordinance and prescribing penalties therefor; * * * ."

In substance, the ordinance provides for the levy of a tax upon each ten cigarettes sold within the city, such tax to be paid by "a local dealer or other agent" affixing a stamp or stamps to packages of cigarettes. The ordinance defines a "dealer" as "every manufacturer, jobber, wholesale dealer, or other person who supplies a seller with cigarettes." It provides for the sale of such stamps by the proper city official to the dealer, who is required to affix them to the packages.

The argument is that the duties required of the dealer are not mentioned in the title.

We have repeatedly held that section 52 of the Constitution, which requires that the object of the law "shall be expressed in its title," does not require that the title shall be an index or digest of the various provisions of the act; that the fact that many things of a diverse nature are authorized or required to be done in the body of the act, though not expressed in its title, is not objectionable if what is authorized by the act is germane to or in furtherance of the object expressed in the title, or has a legitimate and natural association therewith. See *Commonwealth* v. *Dodson*, 176 Va. 281, 305, 306, 11 S. E. (2d) 120, 131, and cases there cited.

The same principles apply here, and we are of opinion that the title of the ordinance is sufficiently broad to satisfy the charter requirement.

The final matter we have to consider is the contention of Fallon Florist, and the other appellants engaged in the floral business, that the ordinance imposing a tax on the purchase of floral designs within the city is so vague, indefinite and uncertain in its definition of a "floral design" as to render it inoperative and invalid.

The ordinance defines a "floral design" as: "Any arrangement consisting mainly of cut flowers and/or other plants, intended for decoration, ornamentive or display purposes,

and including corsages, bouquets, wreaths, garlands, festoons and other like or similar articles, and the component parts thereof."

The attack which these appellants make on this particular ordinance is thus epitomized in their brief:

"Your petitioners sell single cut flowers, bunches of cut flowers of the same and different types of flowers, single flowers with ribbons tied around them, corsages, funeral wreaths, bouquets, growing plants in plain pots, growing plants in decorated pots, etc.

"From the definition of 'floral design' in the ordinance, your petitioners are unable to tell when flowers cease to be in their natural state and become so arranged as to constitute 'floral designs.' Because the ordinance is thus so vague, indefinite and uncertain, your petitioners respectfully submit that said ordinance is invalid."

In support of their position they rely on *Williams* v. *Richmond*, 177 Va. 477, 14 S. E. (2d) 287, 134 A. L. R. 833. In that case we held invalid a section in the tax code of the city of Richmond which provided that: "Any person, firm, association, partnership or corporation engaged in any business, occupation or profession in the city of Richmond for which no specific license tax is levied in this chapter shall pay a license tax of $50.00 per annum. Not prorated."

We there pointed out that one of the prime requisites of a taxing statute is that it must be "certain, clear and unambiguous, especially as to the subject of taxation and the amount of the tax." (177 Va., at page 485.)

Applying this principle we held that this "dragnet" section was "uncertain," that the ordinance contained "no provision for making it certain by any proper authority," and left "the imposition of a license tax on any unnamed business * * * solely in the hands of the commissioner of revenue." Moreover, we said, "The subject of a tax must be determinable from the statute or ordinance and must rest upon the judgment of the *legislative* body; not upon the whims of a ministerial officer." (177 Va., at page 487.)

Hence we concluded that, "If this unceremonious lumping of the newsboy and the steel magnate, the music teacher and the dental laboratory, could be called a classification at all, it is certainly whimsical, irrational, capricious, and grossly unjust." (177 Va., at page 493.)

The ordinance now under review is not subject to the infirmities pointed out in the Richmond ordinance. Here the imposition of the tax is not on an "unnamed business" which rests solely in the hands of an official. Nor is there an attempt to group together undetermined and unrelated subjects of taxation. On the contrary, the ordinance itself clearly defines the subject of taxation as the "purchaser of any floral design within the city of Roanoke." A floral design is defined in the ordinance in clear and plain words of everyday use. It is, the ordinance says, "Any arrangement consisting mainly of cut flowers and/or other plants, intended for decoration, ornamentive or display purposes." This is followed by a specification of five well-known arrangements of flowers, namely, "corsages, bouquets, wreaths, garlands, festoons," and the further inclusive clause of "other like or similar articles." Each of these designated articles has a well-defined meaning not only to the florist trade but to the general public.

If, as the brief puts it, certain of the appellants "are unable to tell when flowers cease to be in their natural state and become so arranged as to constitute 'floral designs,'" this is a matter which merely involves the interpretation and application of the ordinance and does not establish its invalidity. In other words, the fact that one particular group or collection of flowers may not come within the terms of the definition of a "floral design" does not impair the validity of the tax which is imposed upon the purchase of another group or collection which does come within the definition.

The same is true of the point made before us in the oral argument that it is difficult to determine in certain cases when a purchase is made within the city and when not. The fact that the ordinance may or may not apply to a purchase

of flowers pursuant to an order by telephone, telegram or mail from a purchaser beyond the city limits to a vendor within the city limits, does not impair its validity with respect to a transaction which takes place within the city and to which the language of the ordinance clearly applies.

It is well settled that a statute is not fatally indefinite because questions may arise as to its applicability, or opinions may differ with respect to what falls within its terms, or because it is difficult to enforce. See 50 Am. Jur., Statutes, section 473, p. 490; *New* v. *Atlantic Greyhound Corp.*, 186 Va. 726, 743, 43 S. E. (2d) 872, 880.

It is an elementary principle of constitutional law, to which we have frequently adverted, that the propriety, wisdom, necessity and expediency of legislation are exclusively matters for legislative determination. The only concern of the judiciary is whether a particular enactment is within the power of the legislative body and whether it is free from constitutional or legal impediment.

In each of the cases before us we hold that the enactment is within the power of the council of the city of Roanoke and is free from constitutional or legal defect. Accordingly, the decrees appealed from are

*Affirmed.*