# Richmond

CITY OF ROANOKE v. HAROLD W. HILL, AND OTHERS.

April 23, 1952.

Record No. 3922.

Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Randolph G. Whittle* and *James N. Kincanon,* for the appellant.

*Tom Stockton Fox,* for the appellees.

SMITH, J., delivered the opinion of the court.

This is a companion case to *Roanoke* v. *Fisher, post,* p. 651, 70 S. E. (2d) 274. The case at bar involves the validity of a tax levied by the city of Roanoke for the years 1949 and 1950 on all the taxable real estate included within the boundaries of what had formerly been the Williamson Road Sanitary District No. 1, a part of Big Lick Magisterial District of Roanoke county.

Effective as of January 1, 1949, substantial areas of Roanoke county were incorporated into the city of Roanoke as the result of an annexation proceeding theretofore conducted. The areas so annexed to the city from the county and the real estate tax rates per $100 of assessed valuation in force therein during the year 1948, immediately prior to the annexation, are set forth in the following table:

| Classification and Rates of Taxation | Areas Annexed | | | |
| --- | --- | --- | --- | --- |
| | Part of Big Lick Magisterial District | Part of Cave Spring Magisterial District | Part of Salem Magisterial District | All of Williamson Road San. Dist. No. 1 |
| County levy .... | $ .25 | $ .25 | $ .25 | $ .25 |
| County schools .. | 1.25 | 1.25 | 1.25 | 1.25 |
| Road bonds ..... | .. | .. | .05 | .. |
| Garbage collection | .. | .. | .. | .15 |
| Total levies .. | $1.50 | $1.50 | $1.55 | $1.65 |

On February 7, 1949, the council of the city of Roanoke by an ordinance fixed the city's 1949 real estate tax rate as follows on each $100 of assessed valuation:

1. On lands within the city's 1948 corporate limits.... $2.50
2. On lands annexed to the city as of January 1, 1949:
   (a) Former parts of Big Lick Magisterial District 1.50
   (b) Former parts of Cave Spring Magisterial District ..................................... 1.50
   (c) Former parts of Salem Magisterial District... 1.55
   (d) Former Williamson Road Sanitary District No. 1 .................................. 1.65

The same rates as above were subsequently fixed for the year 1950.

After the annexation proceedings had become effective on January 1, 1949, the city of Roanoke provided garbage removal and disposal services without charge to the entire city including the areas annexed from the county.

On March 21, 1949, the appellees, twelve in number, all of whom are residents of the city of Roanoke and own real estate in the newly annexed portion of the city formerly known as Williamson Road Sanitary District No. 1, filed their bill of complaint in accordance with section 8-578 of the Code of 1950 (Michie Code 1942, § 6140a) against the appellant, city of Roanoke, praying that a declaratory judgment or decree be entered adjudicating that the tax rate of $1.65 per $100 of assessed valuation fixed by the appellant on the appellees' lands in the former sanitary district for the year 1949 be declared void and that, instead, the tax rate on appellees' lands be fixed by the court at the sum of $1.50 for the year 1949 and for subsequent years. Appellant filed its demurrer to the bill of complaint on March

30, 1949, assigning two grounds: (1) that the bill showed on its face that the city had not increased appellees' tax rate subsequent to the annexation of appellees' lands, and (2) that a court of law had no authority to fix the tax rate upon appellees' lands since that would constitute a legislative act.

Subsequently the trial court overruled the appellant's demurrer and the appellant filed its answers. After hearing the case on its merits upon a stipulation of facts, the trial court on February 26, 1951, entered a final decree granting the relief prayed for in the appellees' bill of complaint wherein it states in part as follows:

"2. That for the reasons set forth in said opinion of November 8, 1949, the respondent [city of Roanoke] had not the right to include in its tax rate for the years 1949 and 1950 upon the real estate of the complainants and other real estate in the City of Roanoke within what was formerly Williamson Road Sanitary District Number 1 fifteen cents per hundred dollars valuation, which had been formerly included in the tax rate upon said real estate by the County of Roanoke, while said real estate lay in Roanoke County, for garbage collection;

"3. That by fixing the tax rate at $1.65 per hundred dollars valuation upon said real estate for the years 1949 and 1950, the respondent imposed an invalid and illegal rate upon said real estate and the respondent had not the right to fix said rate upon said real estate for said years at a rate more than $1.50 per hundred dollars valuation; * * *."

The appellant has assigned numerous errors to the action of the trial court, but for the purposes of this opinion these can be narrowed down to one issue: Was the final decree entered in this case on February 26, 1951, contrary to the law and evidence?

Specifically, the appellees contend that the city of Roanoke has included in its tax rate of $1.65 a special levy for garbage collection amounting to fifteen cents per $100 of assessed valuation, the same amount that was levied by the county of Roanoke for the special service of garbage collection which was furnished by the county only to the residents of the sanitary district, but which the city of Roanoke furnishes to all of its residents including those within the areas annexed on January 1, 1949.

It is conceded by the appellees that $1.65 per $100 of assessed valuation was the tax rate levied by the county on the land herein involved prior to its annexation and we begin with the presumption that this was a valid tax. Section 21-118 of the Code of

1950 (Michie Code 1942, § 1560o) empowered the county board of supervisors, in its control of the sanitary district, to levy and collect an annual tax upon all the property in the sanitary district to defray all or part of the expenses incident to garbage removal and disposal.

The Constitution of Virginia, Art. XIII, § 169, provides that "* * * The General Assembly may allow a lower rate of taxation to be imposed for a period of years by a city or town upon land added to its corporate limits, than is imposed on similar property within its limits at the time such land is added." Pursuant to this authority, the legislature has provided in what is now section 15-141 of the Code of 1950, that "The tax rate upon the land annexed shall not be increased for a period of five years after such annexation, * * *." It was in compliance with this mandate of the legislature that the council of the city of Roanoke fixed the tax rates for the years 1949 and 1950 on real estate in the areas annexed on January 1, 1949, at a lower rate than the $2.50 rate currently fixed for the area included within the corporate limits of the city of Roanoke prior to January 1, 1949.

Appellees recognize the provisions of Code section 15-141 as being a limitation on the taxing power of the city, but they contend that this does not justify the appellant in imposing a tax which they claim is illegal for other reasons. They say it is not a question of the total amount of tax that the city can impose upon various lands in both the "old" city and the newly annexed areas, but rather whether the rate imposed by the city upon the appellees includes a special levy for a service and is discriminatory against them.

The appellees contend that the $1.65 tax rate complained of includes fifteen cents for garbage collection and that this amounts to the imposition of a special tax upon the appellees in violation of the Constitution, Art. IV, § 63. This argument is based on the fallacious assumption that because the county tax rate of $1.65 included fifteen cents for garbage collection it necessarily follows that the city tax rate of $1.65 also includes fifteen cents for garbage collection. In determining and fixing the 1948 tax rate on real and personal tangible property in the several districts the county, as it lawfully had a right to do, took into consideration the local needs and requirements of each district and fixed the tax rate in the several districts as herein in-

dicated, and the appellees argue that the city must follow the same procedure in fixing its 1949 and 1950 levy. This reasoning is not sound since there is no specific requirement that the city state the items that go to make up its rate. The city says that it fixed one tax rate of one amount and the record bears out this contention. The appellees might just as well have argued that the $1.65 tax rate levied by the city included $.25 for county levy and $1.25 for county schools and therefore the city did not have the legal right to levy the same tax, because to do so would amount to the taxing of city land owners for the benefit of the county. Furthermore, Code section 15-141, already referred to, also provides that "* * * All revenues derived by such city or town from taxation in the territory during such period, from all sources, shall be wholly expended by such city or town schools, streets, sewer, light, water, or other public improvements in the territory annexed and all such revenues received and expenditures made shall be reported to the city or town council and made a matter of public record. * * *" The appellees could easily have determined that no part of the $1.65 tax rate which they paid for the years 1949 and 1950 was used to cover the expenses of garbage collection. As a matter of fact, the record shows that all of the taxes collected from the annexed areas during the years 1949 and 1950 were expended by the appellant on public improvements within said areas. It follows that the service of garbage collection to which the appellees were then accustomed was continued by the city and paid for by revenues collected from the older portion of the city. Therefore, the appellees' garbage collection services during those years cost them nothing, the taxes they paid having been expended wholly on public improvements within the annexed areas. While the tax rate of $1.65 herein complained of is the same rate that was levied by the county it does not include a special tax for a service and the provisions of the Constitution, Art. IV, § 63 are not involved in this controversy.

The appellees further argue that the tax rate of $1.65 violates the provisions of the Constitution, Art. XIII, § 168, which provides that taxes shall be uniform as to class of subjects and levied and collected under general laws, and that the uniformity must be co-extensive with the territory to which it applies. If this section of the Constitution alone could be relied on, the city of Roanoke would have had to levy a tax rate of $2.50 on all the

land in the annexed areas because that was the rate that was levied on all the real estate included in the corporate limits of the city of Roanoke prior to and after the annexation of the area herein concerned. But the Constitution, Art. VIII, § 126, provides for the extension of corporate limits, and Art. XIII, § 169, specifically permits a reduced rate of taxation on the lands annexed for a period of time to be fixed by the legislature.

So much of Art. XIII, § 169, of the Constitution as we are here concerned with has remained in substantially the same language in which it was originally presented to the Constitutional Convention and it has remained unchanged since its adoption. See Debates Constitutional Convention, 1901-02, Vol. II, pp. 2727, 2902, and 3260. By Acts of 1904, ch. 99, p. 144, an annexation law was enacted pursuant to Art. VIII, § 126, of the Constitution. This Act, at page 146, contains the language of Code section 15-141 hereinabove quoted. It should be noted that the Constitutional and statutory restrictions on cities herein referred to deal only with the taxation of land and no other subject of taxation.

Admittedly the tax rates in the city of Roanoke for the years 1949 and 1950 were not uniform. Art. XIII, § 169 of the Constitution and Code section 15-141 not only authorize an exception to the rule of uniformity and equality but they demand that the tax rates in the old and in the new portions of the city be unequal and different if such was the situation prior to the annexation.

Even if Art. IV, § 63, of the Constitution were applicable, it and Art. XIII, § 168, must be read along with Art. XIII, § 169. The language of §§ 63 and 168 is general, while that of § 169 is specific and the general must give way to the specific. *Fallon Florist* v. *Roanoke,* 190 Va. 564, 58 S. E. (2d) 316; *Portsmouth* v. *Weiss,* 145 Va. 94, 133 S. E. 781.

The appellees also complain that the tax rate of $1.65 levied by the city of Roanoke on the lands in the old sanitary district is discriminatory because the lands lying in the three other magisterial districts which were annexed at the same time were taxed at a lower rate than $1.65. This record shows, and it is common knowledge from the many decided cases, that since the enactment of the first annexation law in 1904 it has very often been the case that lands annexed at the same time are situated in two or more districts having different tax rates. An exhibit in

this very case, for example, shows that the city of Richmond on January 1, 1942, acquired lands from seven districts in Henrico county and four districts in Chesterfield county and for a five-year period the city of Richmond fixed tax rates on the annexed lands at the same rate that had been levied thereon by the counties before the annexation, which except in two cases were different and varied from a low of $1.10 to a high of $1.93. If we follow the appellees' argument then these ten districts after they had become a part of the city of Richmond could have contended that they were discriminated against because they were taxed at a rate higher than the lowest rate of $1.10. As a practical matter, it must have been contemplated by the framers of the annexation laws that there might be different rates in the several counties and in the several districts in the same county. If the Williamson Road Sanitary District No. 1 had been the only area annexed by the city of Roanoke on January 1, 1949, unquestionably the $1.65 rate subsequently imposed by the city would not have been discriminatory. The mere fact that other areas were annexed at the same time which had lower tax rates prior to the annexation does not make the continuation of the $1.65 rate for the appellees a violation of the provisions of the Constitution or the statute. Article XIII, § 169, of the Constitution provides for a permissible discrimination and permits lack of uniformity of taxation in those cases where lands are annexed to a new taxing jurisdiction. This provision was intended as a temporary measure to facilitate the transition of the annexation and is for the benefit of the annexed land. The Constitution and statute restrict or limit no further than prohibiting an increase in the tax rate on any given area of land.

There is no constitutional or legal defect in the ordinance enacted by the council of the city of Roanoke on February 7, 1949, wherein the tax rate on appellees' lands was fixed at $1.65 per $100 of assessed valuation. Accordingly, the decree of the trial court entered on February 26, 1951, is reversed, final judgment will be entered for the appellant, and the case will be dismissed.

*Reversed and final judgment.*