## CIRCUIT COURT OF AUGUSTA COUNTY

Harrison May, ex rel.
Robert E. Fulcher et al.

v.

Board of Supervisors
of Augusta County

September 10, 1980

Case No. 2761

By JUDGE ROSCOE B. STEPHENSON, JR.

This is an appeal pursuant to the provisions of Code § 58-841[1] challenging the levy ordered by the Board

[1] "Section 58-841. Appeal from order of levy. -- When any order for a levy is made by the governing body of a county which, in the opinion of the attorney for the Commonwealth, is illegal or from which he shall be required to appeal by petition of one per centum of the registered voters of the county, but no fewer than fifty such voters, such attorney shall appeal therefrom, within thirty days after such order is made, to the circuit court of the county and such appeal shall operate as a supersedeas. Without waiting the final decision of the appeal the governing body may rescind its order and order a levy according to law; or if the court shall, on the hearing of the appeal, be of the opinion that the order is contrary to law, it shall reverse the same and direct the governing body to enter such order as to the court may seem right. If money be collected under any such order, which is afterward rescinded or reversed, the treasurer shall forthwith repay such money to the person from whom it was collected. If he fails so to do, a motion may be made and judgment obtained, in like manner as in cases provided in Section 58-928."

of Supervisors of Augusta County (hereinafter called the "County") for the fiscal year July 1, 1979, through June 30, 1980. The petitioners (hereinafter called the "Taxpayers") contend that the County's budget (adopted simultaneously with the levy) will result in a surplus and that the surplus represents a levy of tax revenues in excess of "the necessary expenses of the government" for the fiscal year 1979-80 in violation of Article X, § 8, of the Constitution of Virginia.

The Taxpayers contend that the surplus in the budget consists of the following items: $665,898.00 in the General Operating Fund, $1,000,000.00 earmarked or "encumbered" for construction of a new jail, $1,126,102.00 earmarked or "encumbered" for construction of Ft. Defiance Middle School, and $340,842.00 in the Federal Revenue Sharing Fund designated "Contingencies." The County presented evidence which indicated that for fiscal year 1979-80 the levy ordered resulted in a deficit in the budget. While it is difficult, if not impossible, for the court to determine the exact amount of *actual* surplus existing at the conclusion of fiscal year 1979-80 (if indeed one exists), the evidence is clear that the County, by its 1979-80 budgets, *estimated* a surplus of $665,898.00. Consequently, the court will proceed to consider the issue presented by the Taxpayers, i.e., whether such an estimated surplus is in violation of Article X, § 8, of the Constitution.[2]

The County takes two positions on the issue: (1) That Article X, § 8, is not applicable to local government but only to the State government, and (2) that assuming, *arguendo*, it does apply to local government, it does not prohibit a budgeted surplus.

I. The Supreme Court of Virginia has never considered whether Article X, § 8, of the Constitution applies to local government. The court, therefore, must endeavor to determine its meaning, application, and effect.

___

[2] Article X, Section 8, reads: "No other or greater amount of tax or revenues shall, at any time be levied than may be required for the necessary expenses of the government, or to pay the indebtedness of the Commonwealth."

In order to construe this provision of. the Constitution, the court must endeavor to determine the intent of its framers. This is the fundamental principle of construction, and all other rules of construction are employed merely to aid the court in determining that intent. In construing constitutional provisions, the court is governed by the same general principles which pertain in ascertaining the meaning of statutes and other writings. 16 Am. Jur. 2d, *Constitutional Law*, §§ 89, *et seq.*

One fundamental rule of construction is that sections of the same article are regarded as in *pari materia* and that the several sections reflect light upon each other and should be construed together. 73 Am. Jur. 2d, *Statutes*, sects. 186, *et seq.*

Article X is entitled "Taxation and Finance." It contains eleven sections. In four sections (§§ 1, 2, 6 and 10), reference is made to both the state and local government. Two sections (§§ 3 and 4) deal exclusively with taxation by local government. The remaining five sections (§§ 5, 7, 8, 9 and 11) make no express reference to local government or to local taxation. An examination of the specific language used in the other sections of Article X throws light on the meaning which should be given to the language used in § 8.

Section 1 pertains to taxable property and provides, *inter alia*, that "[e]xcept as to classes of property herein expressly segregated for either *state* or *local* taxation, the General Assembly may segregate the several classes of property so as to specify and determine upon what subjects *state* taxes and upon what subjects *local* taxes, may be levied." (Emphasis added.)

Section 2 deals with assessments of real estate and tangible personal property in a "county, city, town or regional government." It further provides that "[s]o long as the Commonwealth shall levy upon any public service corporation a state franchise . . . tax . . . its real estate and tangible personal property shall be assessed by a central state agency . . . ."

Section 6 sets forth property that is exempt from taxation. It expressly distinguishes between the state and local government by the use of such language as "property owned . . . by the Commonwealth or any political subdivi-

sion thereof, and obligations of the Commonwealth or any political subdivision thereof . . . ."

And § 10 provides, in part, that "neither the credit of the Commonwealth nor any county, city, town or regional government shall be . . . granted to or in aid of any person . . . ."

Section 3 pertains solely to taxation by local government, stating that the General Assembly "may authorize any county, city, town, or regional government" to tax abutting property owners, and § 4 is limited to local government also, stating "[r]eal estate, coal and other mineral lands, and tangible personal property, except rolling stock of public service corporations, are hereby segregated for, and made subject to, local taxation only . . . ."

Section 5 (providing for a state franchise tax on corporations), § 7 (dealing with the collection and disposition of "all taxes, licenses, and other revenues of the Commonwealth"), § 9 (relating to state debt), and § 11 (providing for a state employees' retirement system) pertain solely to taxation and finance matters of the Commonwealth.

Section 8 (which is the subject of the present litigation) makes no express reference to local government. Therefore, if it does apply to localities, such a construction must rest upon implication. This section speaks of "the Commonwealth" and of "*the* government" (emphasis added). It is a rule of construction that a definite article (in this case the word "the") specifies or particularizes the subject it precedes (i.e., "government") and is a word of limitation. *See, Rocci v. Massachusetts Acc. Co.*, 222 Mass. 336, 110 N.E. 972; *Brooks v. Zalka*, 168 Colo. 265, 450 P.2d 653; *State v. Campbell*, 210 Mo. 202, 109 S.W. 706.

Applying this rule of construction, the court concludes that the words "the government" refers to but one government, the State government. This conclusion is strengthened by the previous observation that elsewhere in Article X the framers were careful to expressly mention local government (as "county, city, town or regional government" or "any political subdivision" of the Commonwealth), whereas no such language is found in § 8.

The Taxpayers assert that, since the Constitution (Article VII, § 2) gives the General Assembly the power to confer upon localities the authority to tax, it naturally follows that the localities are subject to the same limitations as those imposed upon the General Assembly (the State) by Article X, § 8, of the Constitution. They rely upon *Fallon Florist, Inc. v. City of Roanoke*, 190 Va. 564, 58 S.E.2d 316 (1950), and *City of Norfolk v. Norfolk Landmark Pub. Co.*, 95 Va. 564, 28 S.E. 959 (1898). Neither of these cases, however, deals with Article X, § 8, or its predecessors. While these cases hold that, where the General Assembly confers upon a locality the general power of taxation, it grants to such locality all the power it possesses respecting the imposition of taxes, they do not hold, and it does not necessarily follow, as the Taxpayers contend, that such localities are subject to the same limitations as those imposed upon the State by the Constitution. The General Assembly, to the contrary, has enacted statutes which expressly recognize the right of local government to retain a surplus. *See* Code Sections 58-839, 58-844, 15.1-161 and 15.1-161.1.

The court concludes, therefore, that Article X, Section 8, does not apply to local government but applies solely to the State.

II. Assuming, *arguendo*, that Article X, § 8, applies to local government as well as to the State, the question remaining is whether it prohibits a budgeted surplus.

This section has been a part of the Constitution since 1870.[3] In his *Commentary on the Constitution of Virginia* (1974), Professor A. E. Dick Howard, at page 1094, analyzes § 8 as follows:

> Section 8 might well be called the taxpayer's Barmecide feast. The words whet the appetite, but the substance puts little meat on the taxpayer's table. *The courts have treated section 8's language as having but one purpose: to assure that public funds are used only for public pur-*

---

[3] Section 188 of the 1902 Constitution and Article X, Section 20, of the 1870 Constitution.

*poses. The section has never been seriously thought, for example, to prevent a budgetary surplus . . . ."* (Emphasis added.)

As interpreted by the Supreme Court of Virginia, the purpose of § 8 is to prevent the Commonwealth from spending tax money on what are not "necessary expenses of government." The Virginia Court has always dealt with *expenditures* which allegedly violate § 8, never with fiscal planning, including a budgetary surplus. If the expenditure is for a "public purpose," it is a "necessary expense of government" and does not violate § 8. *See, Fairfax County Industrial Dev. Auth. v. Coyner*, 207 Va. 351, 150 S.E.2d 87 (1966); *Harrison v. Day*, 202 Va. 967, 121 S.E.2d 615 (1961); *Shenandoah Lime Company v. Governor*, 115 Va. 865, 80 S.E. 753 (1914).

In *Harrison v. Day*, 202 Va. 967, 121 S.E.2d 615, *supra*, the court, upholding a lease made by the Virginia State Ports Authority against a § 8 (then Section 188 of the 1902 Constitution) challenge, said:

> It is not our function to decide whether it is a wise policy for the Authority to lease this facility rather than to operate it itself. Courts have nothing to do with the wisdom of legislation. The question for us is whether the legislature has the power to authorize the lease. We consider that question in the light of the well-settled principle that any reasonable doubt should be resolved in favor of the constitutionality of an Act of the legislature. Only when it is plainly in violation of the Constitution will the court so decide (citations omitted). On that basis and in view of our holding in the first Ports Authority case, we think it entirely clear that the legislature violated no constitutional provision in authorizing the Authority to lease the property.
>
> The holding in the former case that State appropriations in furtherance of the acquisition, development, and operation of the port facilities are for a public and not a private purpose answers in the negative the question of whether

there is any violation of § 188 of the Constitution . . . .

202 Va. at 972-973, 121 S.E.2d at 619.

In *Fairfax County Industrial Dev. Auth. v. Coyner*, 207 Va. 351, 150 S.E.2d 87, the court said:

Having determined that Chapter 643, creating the Industrial Authority and empowering it to issue revenue bonds for the construction of a facility to be leased to a private industry, was to serve a public purpose and thus constituted a proper function of government, there is no violation of § 188 of the Constitution . . . .

No public funds are here used for a private purpose . . . the money appropriated was for a public purpose and no tax funds would have been used for a non-government purpose.

207 Va. at 360, 150 S.E.2d at 94-95.

The key words in § 8 are "the necessary expenses of the government." It is for the legislative body to determine what is a necessary governmental expense, and, as previously noted, if the expenditure is for public purposes, it is deemed to be necessary. A court cannot "second guess" a legislature on this subject, thereby substituting its judgment on the question for that of the elected representatives of the people. For a court to do so would do violence to the constitutional doctrine of separation of powers as expressed in Article III of the Constitution of Virginia.

The Taxpayers, in their brief, concede that the County has "the right to, and should exercise a reasonable discretion in arranging in advance for necessary taxes to meet obligations when they come due." They also say that "[i]n fixing the amount of a tax, a legislative body is given considerable discretion, and every presumption is in favor of the reasonableness of the tax" (Taxpayers' Brief, p. 12). Finally, they contend that "if they (the legislature) abuse this discretionary power and raise taxes faster than they are needed, the Courts will interfere." (Taxpayers' Brief, p. 13).

The court does not adopt this test (i.e., whether the legislature has abused its discretion), but, if that were the test, the court finds from the evidence in the present case that the County has not abused its discretion. To the contrary, the evidence indicates that Augusta County has been blessed with careful planning, with a sound and stable government, and with fair and reasonable taxes.

The Taxpayers also concede that some surplus is constitutionally permissible when they say "[t]his does not mean that a governing body must reduce their tax levy by the amount of *any* surplus, no matter how small, for governing bodies may conduct their business on a cash basis and carry a reasonable cash balance from year to year." They contend, however, that it is the function of a court to determine what constitutes a reasonable surplus. Obviously, for a court to make such a determination, it would be required to make legislative decisions, deciding what expenditures were necessary and whether they were wise or unwise. These, of course, are decisions which can be made only by the legislature. The legislature, being an elected representative body, is answerable to the voters. If taxes are too high or if expenditures are deemed to be unnecessary by the taxpayers, then their remedy lies not with the court but with the ballot. In *Fallon Florist v. City of Roanoke*, 190 Va. 564, 58 S.E.2d 316, the court said:

> As the General Assembly is the judge of what taxes are necessary and expedient to meet the needs of the Commonwealth, so, too, is the local legislature the judge of what taxes may be levied within the limits of its delegated authority.

190 Va. at 578, 58 S.E.2d at 323.

It is obvious that the General Assembly considers a surplus to be constitutionally permissible. It has expressly approved the retention of a surplus by a locality by enacting Code §§ 58-839 and 58-844, each of which reads in pertinent part as follows:

> Any funds collected and not expended in any fiscal year shall be carried over to the succeed-

ing fiscal years and shall be available for appropriation for any governmental purposes in those years.

Moreover, Code § 15.1-161 provides in part that a county budget "shall be accompanied by a statement of the contemplated revenue . . . *and surplus* . . ." (emphasis added), and the 1980 General Assembly enacted Code Section 15.1-161.1 which provides:

Any county, city or town is authorized to budget for and include in its budget a reasonable reserve for contingencies.

While such legislative interpretation of the Constitution is not binding on a court, "it is entitled to much weight." *Fallon Florist v. City of Roanoke*, 190 Va. 564, 576, 58 S.E.2d 316, 322.

It is to be remembered that a budget is merely an estimate of revenues and expenses. It is prepared and adopted "for informative and fiscal planning purposes only . . ." Code § 15.1-160.

The Attorney General of Virginia, by an opinion dated July 19, 1974 (Ops. A.G. 1974-75, pp. 461-62) states that Article X, § 8, of the Constitution does not prohibit Surry County from budgeting a surplus. In that opinion, he said:

Within the limitations of necessity set forth in the aforementioned constitutional and statutory provisions, governmental entities may levy a tax that will yield a budgetary surplus. See McQuillin, *Municipal Corporations*, § 44.25. In *Rancho Santa Anita, Inc. v. Arcadia*, 20 Cal. 2d 319, 125 P.2d 475, 478 (1942), the court stated:

"The fact that the City Council did adopt a budget setting forth estimated expenditures for the ensuing year did not oblige the council to levy taxes at a rate that would yield no more than was necessary to meet such expenditures. Since there was no constitutional or statutory requirement that the tax rate conform to estimated

budgetary expenditures, the Council was free to levy a tax that would yield a surplus. The economic and social considerations that underlay such a course of action are properly subject to legislative discretion rather than to judicial review."

I am aware of no Virginia constitutional or statutory provisions requiring that a local tax rate must conform to estimated budgetary expenditures. Section 58-839 states that the levy of local taxes does not impose a duty to appropriate the funds for any expenditure.

The court holds, therefore, that Article X, § 8, of the Constitution of Virginia does not prohibit the County from budgeting and retaining a surplus, that the levy ordered by the county for the fiscal year 1979-80 is legal, that the prayer in the Taxpayers' petition is denied and that said petition is accordingly dismissed.