# Richmond

B. F. WILLIAMS AND OTHERS v. CITY OF RICHMOND.

April 21, 1941.

Record No. 2352.

Present, All the Justices.

*Lionel Moses,* for the plaintiffs in error.

*Horace H. Edwards* and *Henry R. Miller, Jr.,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

B. F. Williams and eight other persons similarly situated filed separate petitions under §414 of the Tax Code for relief from erroneous assessments of license taxes and penalties imposed on them by the city of Richmond under Chapter 10, §166 of the city code. The court refused to relieve them of the license taxes but did grant them relief from the penalties. Accordingly an order was entered against the petitioners for the tax. They sought and were granted a writ of error and the city has assigned cross-error to that portion of the order which relieved them of the penalties.

The petitioners are and have been conducting dental laboratories in the city of Richmond for a number of years. They make dental appliances upon the order of licensed dentists. Until the present assessment was

made against them in 1939 for that year and the three previous years, they had never been called upon to obtain a license or to pay a license tax. Some of the petitioners had previously inquired of the commissioner of revenue as to whether or not they were assessable with a license tax, and he assured them that none was required for their business. However, in the latter part of 1939, contrary to his former assurance, the commissioner assessed each of them with a license tax under §166 for 1939 and for the three previous years together with penalties and interest that are usually imposed upon those in default.

The source of the power to levy a license tax is §170 of the Constitution. It reads in part as follows: "The General Assembly may levy a tax on incomes in excess of six hundred dollars per annum; may levy a license tax upon any business which cannot be reached by the *ad valorem* system; * * * ."

The constitutional power to tax was duly and properly delegated by the General Assembly to the city of Richmond in §§61 and 62 of the charter of the city. Those sections are as follows:

"61. For the execution of its powers and duties the City Council may raise annually, by taxes and assessments in said city, such sums of money as they shall deem necessary to defray the expenses of the same, and in such manner as they shall deem expedient, in accordance with the laws of this State and of the United States, and may, by curative ordinance, ratify and confirm irregular assessments and levies of taxes heretofore or hereafter made, and the acts of all ministerial officers in connection therewith, and any such ordinance heretofore passed is hereby validated and confirmed.

"62. The City Council may grant or refuse licenses, and in the event of the refusal to grant any license, may prohibit the conduct of business without such a license, and may require taxes to be paid on such licenses, to auctioneers, to public theatricals or other performances

or shows; to keepers of billiard tables, tenpin alleys and pistol galleries; to hawkers and peddlers in the city; or persons to sell goods by sample therein; to agents for the sale or renting of real estate; to commission merchants, and all other business which cannot, in the opinion of the Council, be reached by the *ad valorem* system under the preceding section; provided, the Council shall, in addition, be expressly authorized and empowered to regulate the sale at auction of jewelry * * * authorized to impose such fines and penalties as it may deem proper.''

Thus it is seen that the city of Richmond unquestionably has the express power to require a license tax of the operators of any business conducted in the city if such requirement does not contravene the Federal and State Constitutions.

Pursuant to this authority and power the city of Richmond through its council has ordained in one hundred and fifty-five sections of its tax code (Chapter 10) a great number of specific businesses, occupations, and professions which are thereby made liable for a license tax. The ordinance which authorized the tax on the businesses and professions named in those sections is definite and specific. It identifies the subject of the tax in each case in certain terms and apparently includes every business, occupation, and profession that could be ascertained. However, the business of conducting a dental laboratory was not, in any of the great number of named businesses, made liable for a city license tax.

In addition to specifying the great number of businesses, occupations, and professions which were made liable to a license tax, the city council enacted a "dragnet" section, known as §166 of the tax code. It reads thus: "License Tax Where None Prescribed. Any person, firm, association, partnership or corporation engaged in any business, occupation or profession in the city of Richmond for which no specific license tax is levied

in this chapter shall pay a license tax of $50.00 per annum. Not prorated.''

The commissioner of the revenue, as already indicated, assessed the petitioners under the section quoted with the tax in question. They contend that the assessment is void because the ordinance is too vague and indefinite to constitute a taxing ordinance. They also contend that the challenged ordinance amounts to an arbitrary and unreasonable classification and that it contravenes the Federal and State Constitutions.

■ License taxes may be imposed as a police regulation or as purely a revenue measure. Those imposed in this case were imposed only for raising revenue. It clearly appears from the record that no license tax on the business of conducting a dental laboratory is necessary or desirable as a police regulation.

■ A taxing ordinance stands on the same basis as a taxing statute. The authority of a city to impose a license tax on business depends solely upon its charter and the test is whether the charter contains the grant of power sought to be exercised. "If it does contain such grant, an ordinance passed in pursuance of it occupies the same plane with an act of the Legislature." *Gordon Bros.* v. *Newport News,* 102 Va. 649, at p. 651, 47 S. E. 828.

■ Tax laws are always to be liberally construed in favor of the taxpayer and they are not to be extended by implication. If there be substantial doubt it must be resolved in his favor. The rule is clearly stated in 59 C. J., *Statutes,* §670: "As a general rule revenue laws, such as laws imposing taxes and licenses, are neither remedial laws, nor laws founded upon any permanent public policy; but on the contrary, operate to impose burdens upon the public, or to restrict them in the enjoyment of their property and the pursuit of their occupations, and, when they are ambiguous or doubtful, will be construed strictly in favor of the taxpayer and against the taxing power. * * * ''

In *United States* v. *Merriam*, 263 U. S. 179, 68 L. Ed. 240, 44 S. Ct. 69, 29 A. L. R. 1547, in speaking of tax statutes it is said: "If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer."

The rules of construction expressed in our Tax Code (§2) do not encroach upon those announced above. Under the Tax Code the revenue statutes "shall always be so construed and so restricted in their application as not to conflict with any of the provisions of the Constitution of the United States or of the Commonwealth of Virginia," and under Code, §5, clause 15, it is provided that ordinances of cities are not to be inconsistent with the Federal and State Constitutions. Therefore, the general rules of construction to the effect that taxing statutes must be construed liberally in favor of the taxpayer when they are doubtful or ambiguous remain unaffected by Code, §5, clause 15, and §2 of the Tax Code.

One of the prime requisites of any statute is certainty, and this is especially true of a taxing statute. It is said in 25 R. C. L., *Statutes*, §307: "It is to be fairly and justly presumed that the legislature, which possesses a power so comparatively unrestrained in its force and searching in its extent as the power of taxation, has so shaped the law as, without ambiguity or doubt, to bring within it everything that it was meant should be embraced." And the rule is expressed thus in 59 C. J., *Statutes*, §160: "Act imposing tax must, under the rules above stated, be certain, clear, and unambiguous, especially as to the subject of taxation and the amount of the tax."

An example of fatal uncertainty in a licensing statute may be found in *State ex inf. Crow* v. *West Side St. Ry. Co.*, 146 Mo. 155, 47 S. W. 959. Here the State legislature provided that before a municipality could grant a franchise to a gas, electric, street railway, railroad, telephone, telegraph, or water company, it must receive bids from all interested companies and license

that company which would give the largest percentage of gross receipts to the city, which in no event should be less than two per cent. The city ordinance under which the respondent was operating was not passed in compliance with the act. The court said, with respect to the act: "This attempt at legislation is so indefinite and uncertain, by reason of the effort to regulate the disposition of a great number of franchises by one general rule, that we must hold it incapable of practical operation and enforcement." It then quoted from *Drake* v. *Drake,* 15 N. C. 110, to this effect, "If the terms in which it [a statute] is couched be so vague as to convey no definite meaning to those whose duty it is to execute it, either ministerially or judicially, it is necessarily inoperative."

There is a particularly apposite statement in the early Texas case of *Western Union Telegraph Co.* v. *State of Texas,* 62 Tex. 630: "It is of the utmost importance, for the protection of the taxpayer, that tax laws should be certain, both as to the thing taxed and as to the amount of the tax, and the manner for its ascertainment; that the tax-payer may have an opportunity, without the expense of litigation, to pay such taxes as he may owe; and a tax law which does not accomplish this purpose ought to be held invalid, whether this results from an attempted exercise of power not possessed, through which the law becomes uncertain by both proper and improper subjects being combined and selected for taxation, or by the failure of the Legislature for any other reason to furnish the rules by which taxes may be levied, assessed and collected."

In the challenged section of the ordinance, what is meant by "any person, firm, association, partnership, or corporation engaged in any business, occupation or profession?" The household servant is certainly engaged in an occupation. This is also true of the housewife, the president of a wealthy corporation, and the postmaster. The street bootblack and the newsboy conduct a business. Music teachers and ministers follow a profession.

■■■■■

If we consider "what may be done" under the ordinance, as we must when we are testing its validity, those we have mentioned may be required to pay a license tax of $50 regardless of how trivial or serious their callings might be.

■■■■ Not only is this catch-all section of the city tax code uncertain, but there is no provision for making it certain by any proper authority. The imposition of a license tax on any unnamed business rests solely in the hands of the commissioner of the revenue. The subject of a tax must be determinable from the statute or ordinance and must rest upon the judgment of the *legislative* body; not upon the whims of a ministerial officer. The intent of the legislative body must be found in the language used. Here the city council, in enacting §166, expressed no intent to lay a tax on dental laboratories. Intent cannot be presumed, because the council has never exercised its judgment under §166, or expressed any purpose to tax the petitioners. The license tax here is solely the result of the action of the commissioner of the revenue. He, and not the council, has selected the subject of taxation.

In the case of *Armour & Co.* v. *City of Richmond,* 118 Va. 217, 87 S. E. 609, Armour and Co. was taxed under this portion of the ordinance: "and such other business as cannot, in the opinion of the committee on finance. be reached by the *ad valorem* system." This court held: "It would seem clear that in the imposition of a special occupation license tax, the designation of the subject of the tax and the object upon which it is to operate are both essential to the complete exercise of the power. Therefore, the absence of either would *per se* render the legislative act incomplete and inoperative. If that be true, it follows that further action must be taken to vitalize the incomplete act; and such action necessarily must emanate from a legislative and not an administrative source. *Proprio vigore,* the ordinance does not impose a

special occupation license tax on other businesses, but only on such other businesses as the committee on finance may be of opinion cannot be reached by the *ad valorem* system. So that at last the other occupations which are to be amenable to the tax are determinable, not by the terms of the ordinance or the city council, but rest upon the opinion and discretion of the finance committee alone.''

The *Armour Case* is in our opinion controlling here and compels us to nullify the license taxes imposed on the petitioners.

 It is a well-recognized principle that the test of the validity of an ordinance is not what has been done but rather what may be done under its provisions. *Richmond* v. *Model Steam Laundry*, 111 Va. 758, 69 S. E. 932. Under the disputed section in the instant case, any calling, however menial, is subject to a yearly $50 tax. Petitioners assert that rigid enforcement of this catch-all provision will deter or prevent citizens of Richmond from pursuing certain lawful trades, and that this is an abrogation of certain fundamental rights guaranteed by the Federal and State Constitutions.

 The Fourteenth Amendment of the Constitution of the United States provides, among other things: ''* * * nor shall any State deprive any person of life, liberty, or property, without due process of law; * * * .'' This is perhaps the most widely-discussed phrase in the Federal Constitution, and many thousands of words have been used to discuss its applicability to various situations. ''When applied to substantive rights it is interpreted to mean that the government is without right to deprive a person of life, liberty, or property by an act that has no reasonable relation to any proper governmental purpose, or which is so far beyond the necessity of the case as to be an arbitrary exercise of governmental power.'' 16 C. J. S., *Constitutional Law*, §567.

Article 1, §1, of the Constitution of Virginia guaran-

tees to all citizens of Virginia "the enjoyment of life and liberty, with the means of acquiring and possessing property, and pursuing and obtaining happiness and safety."

This court, in *Young* v. *Commonwealth*, 101 Va. 853, 45 S. E. 327, had this to say with respect to fundamental rights: "The word 'liberty,' as used in the Constitution of the United States and the several States, has frequently been construed, and means more than mere freedom from restraint. It means not merely the right to go where one chooses, but to do such acts as he may judge best for his interest, not inconsistent with the equal rights of others; that is, to follow such pursuits as may be best adapted to his faculties, and which will give him the highest enjoyment. The liberty mentioned is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purpose above mentioned. These are individual rights, formulated as such under the phrase 'pursuit of happiness' in the Declaration of Independence, which begins with the fundamental proposition that all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness."

In 26 R. C. L., *Taxation*, §17, appears this statement: "When a legislative body having power to tax a certain subject matter actually imposes such a burdensome tax as effectually to destroy the right to perform the act or to use the property subject to the tax, the validity of the enactment depends upon the nature and character of the right destroyed. If so great an abuse is manifested as to destroy natural and fundamental rights which no free government could consistently vio-

late, it is the duty of the judiciary to hold such an act unconstitutional."

Cooley, in his work on *Constitutional Limitations* (5th ed.), states (p. 603): "Having thus indicated the extent of the taxing power, it is necessary to add that certain elements are essential in all taxation, and that it will not follow as of course, because the power is so vast, that everything which may be done under pretense of its exercise will leave the citizen without redress, even though there be no conflict with express constitutional inhibitions. Everything that may be done under the name of taxation is not necessarily a tax; and it may happen that an oppressive burden imposed by the government, when it comes to be carefully scrutinized, will prove, instead of a tax, to be an unlawful confiscation of property, unwarranted by any principle of constitutional government."

The Supreme Court of Florida, in *State ex rel. Davis v. Rose*, 97 Fla. 710, 122 So. 225, has expressed itself thus: "The citizen's right to pursue any lawful business is property that cannot be taken from him without due process of law. It is one of the privileges of a citizen of the United States of which he cannot be deprived without invading his right to liberty * * * . The legislature may not, under the guise of protecting public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations."

In 37 C. J., *Licenses*, §41, is found this statement: "It is well settled that, except as to those occupations or privileges in respect to which a restrictive or prohibitive fee or tax may be imposed, a license fee or tax, whether under the police power or under the taxing power, can legally be imposed only in such amount as, under the circumstances, is just and reasonable." And again, in §42: "In accordance with general rules as to prohibitory legislation, in regard to licenses, if a license fee or tax is so high as to be virtually confiscatory or

prohibitive of a useful and legitimate occupation or privilege, or to create a monopoly for the benefit of a few, the act or ordinance imposing it is invalid; and this rule applies where the tax is imposed for revenue.''

Under §166 of the Richmond ordinance the newspaper delivery boy, the street bootblack, the domestic servant, the salesgirl, the insurance and railroad executives, the minister, the teacher, the music teacher, the movie actress, and the owner of a dental laboratory are all placed in one class and all may be required to obtain a license and pay the flat tax of $50. Such a tax might result in wrecking the business of the newsboy and the street bootblack, while the burden would be comparatively light on the insurance and railroad executives. The test, however, as has been pointed out before, is what *may* be done under the ordinance. It is clear that strict enforcement of §166 would be a death blow to certain modest callings. This we cannot allow. We hold that §166 is inimical to the due process clause of the Fourteenth Amendment of the Federal Constitution and to Article 1, §1, of the State Constitution.

One other argument remains to be met and disposed of. The respondent urges that a classification has been made, and, so long as the burden of the license tax is the same on all members of a particular class, no objection can be made to the ordinance as a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment of the Federal Constitution. See *Newport News & O. P. Ry. & Electric Co.* v. *Newport News,* 100 Va. 157, at p. 161, 40 S. E. 645.

The power of taxation is fundamental to the government of cities. In the very nature of things the Constitution does not compel the adoption of an ''ironclad rule'' of equal taxation, nor prevent differences in taxation. It does not prevent the exercise of discretion in the selection of subjects or their reasonable classification. A wide discretion is allowed the legislative power in making classifications of trades and businesses which

may be made subject to a license tax. If the classification is neither capricious nor arbitrary and rests upon some reasonable consideration of differences it is usually inoffensive to the equal protection provision of the Constitution. *State Board of Tax Com'rs of Indiana* v. *Jackson*, 283 U. S. 527, 75 L. Ed. 1248, 51 S. Ct. 540.

A classification will not be sustained, however, where it is arbitrary or capricious, and rests on no substantial or reasonable basis. In *Bell's Gap R. Co.* v. *Pennsylvania*, 134 U. S. 232, 33 L. Ed. 892, 10 S. Ct. 533, it is said: ''But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject, that would include all cases. They must be decided as they arise.''

And in *State ex rel. Bonsteel* v. *Allen*, 83 Fla. 214, 91 So. 104, 26 A. L. R. 735, we find the following statement: ''While it is within the power of the courts to declare laws levying license taxes void because of the unreasonable and arbitrary exercise of the state's power either in the classification of or in fixing the amount of the license, such power will not be exercised unless the amount of the license tax is so great, or the classification so palpably arbitrary as to be beyond the necessities for the legislation, or equivalent to an impairment of the constitutional rights of property, or tend to prevent a great number, if not all persons, from pursuing otherwise lawful occupations which do not impair public safety, public health, or destroy property.''

See also, *State ex rel. Wyatt* v. *Ashbrook*, 154 Mo. 375, 55 S. W. 627, 77 Am. St. Rep. 765, 48 L. R. A. 265.

The Richmond ordinance carefully sets forth one hundred and fifty-five businesses and fixes a license tax for each. It then sets a flat fee of $50 on all other businesses, occupations, and professions. If this uncere-

monious lumping of the newsboy and the steel magnate, the music teacher and the dental laboratory, could be called a classification at all, it is certainly whimsical, irrational, capricious, and grossly unjust. In addition to its other infirmities, it is in contravention of the ''equal protection'' provision of the Federal Constitution, and for that additional reason will not be allowed to stand.

The order complained of is reversed and a final judgment is here entered for the petitioners.

*Reversed and final judgment.*