# Richmond

CITY OF RICHMOND, A MUNICIPAL CORPORATION v. ROBERT T. FARY, DIRECTOR OF FINANCE OF THE CITY OF RICHMOND.

December 1, 1969.

Record No. 7290.

*Waller H. Horsley (Lee F. Davis, Jr., Special Counsel; Hunton, Williams, Gay, Powell & Gibson,* on brief), for petitioner.

*R. Harvey Chappell, Jr. (James Edward Betts; Charles E. Friend; Christian, Barton, Parker, Epps & Brent,* on brief), for respondent.

GORDON, J., delivered the opinion of the court.

In July 1969 the Richmond City Council enacted an ordinance imposing an annual tax of $12 on persons engaged in an occupation for

profit within the City who earn $3,100 or more per year.[1] Because the City's Director of Finance questioned the validity of the tax, he refused to perform a necessary ministerial act. Invoking our original jurisdiction, the City asks us to issue a writ of mandamus against the Director, thereby upholding the tax.

█ Under § 2.02(a) of the Richmond charter, the General Assembly has granted the City broad general authority to levy such taxes as the Council deems necessary.[2] So the City can impose taxes

---

[1] "Occupation Tax

"Sec. 35-247. Definitions.

"Person.—The word 'person' as used in this article shall be deemed to mean any individual, human being or natural person who (a) is engaged as an employee or otherwise in any occupation, trade, calling or labor for profit within the City of Richmond for a total period of one hundred twenty days or more in any one tax year; (b) earns from such occupation, trade, calling or labor the sum of Three Thousand One Hundred Dollars or more in any one tax year; and (c) does not pay the City of Richmond any license tax as set forth in Article 7 of Chapter 35 of the Richmond City Code of 1963, as amended.

"* * *

"Sec. 35-248. There is hereby levied and imposed on every person as defined in section 35-247 hereof a tax of Twelve Dollars for each and every tax year.

"Sec. 35-249. Every employer within the City of Richmond shall, on or before the first day of February following each and every tax year, file with the Commissioner of the Revenue of the City of Richmond on a form prepared and furnished by him a list of the names and resident addresses of every person as defined in section 35-247 hereof and employed in the City of Richmond by such employer.

"Sec. 35-250. Every person as defined in section 35-247 who is self employed shall, on or before the first day of February following each and every tax year, report to the Commissioner of the Revenue of the City of Richmond his name and resident address.

"Sec. 35-251. The Commissioner of the Revenue of the City of Richmond shall, on or before the first day of March following every tax year assess the tax levied and imposed by section 35-248 hereof against every person believed by him to be assessable with such tax and shall by mail or otherwise cause to be delivered to such person a statement indicating the amount of the tax due. Failure of the Commissioner of the Revenue of the City of Richmond to mail or deliver such statement shall not affect the duty of the taxpayer to pay the tax as required by section 35-252 hereof.

"Sec. 35-252. Every person assessable with the tax levied by section 35-248 hereof shall pay the Collector of City Taxes such assessment on or before the first day of May of the year next succeeding the tax year for which such tax was assessable.

"* * *" Richmond, Va., Ordinance 69-157-147, July 14, 1969.

[2] "Sec. 2.02 Financial powers.

"In addition to the powers granted by other sections of this Charter the city shall have power:

"(a) To raise annually by taxes and assessments in the city such sums of money as the council shall deem necessary to pay the debts and defray the expenses of the city, in such manner as the council shall deem expedient; provided, that such

that are not prohibited by the charter or by constitution or statute. *Norfolk* v. *Norfolk Landmark Publishing Co.*, 95 Va. 564, 567, 28 S.E. 959, 960 (1898).

Examples of taxes that the City Council is prohibited from levying are capitation taxes in excess of $1 per year and income taxes. Richmond, Va., Charter § 2.02(a), n. 2 *supra;* Va. Code Ann. § 58-80 (Repl. vol. 1969). But the Richmond ordinance does not levy a capitation tax or an income tax. *Gaugler* v. *Allentown*, 410 Pa. 315, 189 A.2d 264 (1963); *Langston* v. *Danville*, 189 Va. 603, 54 S.E.2d 101 (1949). Rather, the ordinance levies a tax upon engaging in an occupation, commonly called an occupation tax. *Ramaley* v. *City of St. Paul*, 226 Minn. 406, 33 N.W.2d 19 (1948), cited with approval in *Commonwealth* v. *Shell Oil Company*, 210 Va. 163, 166, 169 S.E.2d 434, 437 (1969).

This Court has called a similar tax a license tax. *Williams* v. *City of Richmond*, 177 Va. 477, 14 S.E.2d 287 (1941). More recently we have recognized that an occupation tax differs from a true license tax in that an occupation tax is not exacted as a prerequisite to the right to engage in business. *Commonwealth* v. *Shell Oil Co., supra* at 166-67, 169 S.E.2d at 437. Whether the Richmond tax be regarded as a license tax or occupation tax, we agree with counsel for the City that Code § 40-68 embodying the Virginia right-to-work law has no relevance to the issues before us.

What has been said disposes of several questions raised by counsel for the Director of Finance. The troublesome questions raised are whether (I) the occupation tax is a payroll tax prohibited by § 2.02(a) of the City charter and Virginia Code § 58-851.2, (II) the tax contravenes the due process guarantee of the Fourteenth Amendment and a similar guarantee of the Virginia Constitution or the equal protection guarantee of the Fourteenth Amendment, and (III) the

---

taxes and assessments are not prohibited by the laws of the Commonwealth. In addition to, but not as a limitation upon, this general grant of power the city shall, when not prohibited by the laws of the Commonwealth, have power to levy and collect *ad valorem* taxes on real estate and tangible personal property and machinery tools, and a capitation tax not exceeding one dollar per annum on each resident of the Commonwealth within the limits of the city; * * * to require licenses, prohibit the conduct of any business or profession without such a license, require taxes to be paid on such licenses in respect of all businesses and professions which cannot, in the opinion of the council, be reached by the *ad valorem* system; * * * *provided, however, that nothing herein contained shall be construed as permitting the city to levy and collect directly or indirectly a tax on payrolls."* (Emphasis supplied.) Va. Acts of Assembly 1948, ch. 116, at 177-78.

ordinance imposing the tax is invalid because of vagueness and an improper delegation of legislative power.

## I

Section 2.02(a) of the charter of the City of Richmond, granted by the General Assembly at its 1948 session, contains the following proviso: "provided, however, that nothing herein contained shall be construed as permitting the city to levy and collect directly or indirectly a tax on payrolls."[3] Richmond, Va., Charter § 2.02(a), n. 2 *supra*.

In 1948 the State of Virginia was levying a tax that this Court had characterized a "pay roll" tax, the unemployment compensation tax now levied under Code § 60.1-75—a tax on employers equal to certain percentages of wages payable by them to employees. *U.C.C. v. Harvey*, 179 Va. 202, 206, 18 S.E.2d 390, 392 (1942); *cf. Gillum v. Johnson*, 7 Cal.2d 744, 763, 62 P.2d 1037, 1046 (1936) (social security tax is a payroll tax). So it is reasonable to assume that the General Assembly had such a tax in mind when it enacted the charter provision that prohibited Richmond from levying a tax on payrolls. And the language of the following statute enacted in 1952 evidences the General Assembly's equating a "payroll tax" with a tax like the unemployment compensation tax:

> "Tax on payrolls prohibited.—No political subdivision of this State shall impose, levy or collect, directly or indirectly, any tax on payrolls. All such taxes in force on June twenty-eight, nineteen hundred fifty-two are repealed.
>
> "*The provisions of this section shall not be deemed to prohibit or limit the withholding from an employee's salary of any sums required by the Social Security Act, the Unemployment Compensation Act, the federal income tax statutes, deductions for retirement systems, or other deductions authorized by the employee or made pursuant to any assignment or execution.*" (Emphasis supplied.)

Va. Code Ann. § 58-851.2 (Repl. vol. 1969).

We therefore conclude that a "payroll tax", as referred to in the City charter and Code § 58-851.2, is a tax that substantially fits the

[3] The proposed charter, as prepared by the Richmond Charter Commission, approved by the electorate of the City and introduced at the 1948 session, did not contain the proviso quoted in the text. The Proposed Charter for the City of Richmond prepared by the Richmond Charter Commission (1947) at 2-3; H.B. 1, 1948 Session of the General Assembly of Virginia.

following definition: *"payroll tax* n: a government or state tax on employers as a percentage of wages and salaries paid to employees—compare Withholding Tax".[4] Webster's New International Dictionary (3d ed. 1967) at 1659. And the occupation tax levied by the City of Richmond does not fit that definition in any particular.

Counsel for the Director of Finance contends, however, that by the occupation tax the City has *indirectly* imposed a payroll tax in contravention of § 2.02(a) of the City charter and Code § 58-851.2. But the occupation tax is divorced from the payroll. The tax is imposed not only upon persons who are on a payroll, but also on self-employed persons who are not on any payroll. And no employer withholds the tax or collects it from an employee.

In effect, counsel for the Director of Finance contends that the prohibition against levying "directly or indirectly a tax on payrolls" should be interpreted as intended to prohibit any tax assessable because a person receives wages or profit from an occupation. But no such intent can be reasonably gathered from the quoted words.

## II

■ Counsel for the Director of Finance relies upon *Williams v. City of Richmond*, 177 Va. 477, 14 S.E.2d 287 (1941), to sustain his contention that the Richmond occupation tax violates due process and equal protection. The ordinance involved in *Williams*, § 166 of the Richmond tax code, imposed a flat tax of $50 upon " 'any person, firm, association, partnership, or corporation engaged in any business, occupation or profession in the city of Richmond for which no specific license tax [was] levied [by the City].' " *Id.* at 483-84, 14 S.E.2d at 289.

The Court pointed out that the ordinance required the newspaper boy and the street bootblack, as well as the insurance and railroad executives, to pay the same $50 tax. In holding that the ordinance violated due process, the Court said:

> "It is clear that strict enforcement of § 166 would be a death blow to certain modest callings. This we cannot allow. We hold that § 166 is inimical to the due process clause of the Fourteenth Amendment of the Federal Constitution and to Article 1, § 1, of the State Constitution."

---

[4] This definition was suggested by counsel for the City, and no other definition was suggested by counsel for the Director of Finance.

*Id.* at 491, 14 S.E.2d at 292; *contra, Ping* v. *City of Cortez,* 139 Colo. 575, 342 P.2d 657 (1959).

We do not find the same objection to the Richmond occupation tax now before us. The $12 occupation tax is not assessable against every newspaper delivery boy and bootblack, but is assessable only against those who earn at least $3,100 per year. And since no person against whom the tax is assessable is required to pay more than 0.4% of his earnings, no person is required to pay a confiscatory percentage of his earnings.[5]

The Court in *Williams* also held that the former Richmond tax violated the equal protection clause of the Fourteenth Amendment. Using language with due-process overtones, the Court said:

"If this unceremonious lumping of the newsboy and the steel magnate, the music teacher and the dental laboratory, could be called a classification at all, it is certainly whimsical, irrational, capricious, and grossly unjust."

*Id.* at 492-93, 14 S.E.2d at 292-93.

We do not find the same objection to the Richmond occupation tax now before us. The occupation tax lumps not all persons, however nominal their earnings and menial or sporadic their occupations, but rather persons who earn at least $3,100 and work at least 120 days per year. Richmond, Va., Code § 35-247, n. 1 *supra.*

Perhaps in no other constitutionally-regulated area does the Constitution of the United States, as interpreted by the Supreme Court, give more latitude to state legislative bodies than in the area of taxpayer-classification.

"The power of the State to classify according to occupation for the purpose of taxation is broad. Equal protection does not require identity of treatment. *It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary.* [Emphasis supplied.] . . . 'In its discretion it may tax all, or it may tax one or some, taking care to

---

[5] The Virginia income tax assessable against an unmarried newspaper delivery boy or street bootblack whose gross earnings are $3,100 per year, and who claims his $1,000 exemption, business deductions of $500 and the standard non-business deduction of $130, is $29.40. That tax is about 1% of $3,100, more than twice the amount of the Richmond occupation tax. Yet no one seriously suggests today that the State income tax laws violate due process.

accord to all *in the same class* equality of rights.' . . . It may even tax wholesalers of specified articles on account of their occupation without exacting a similar tax on the occupations of wholesale dealers in other articles. Our disapproval of the wisdom or fairness of so doing is not a ground for interference. * * *." *Walters* v. *City of St. Louis*, 347 U.S. 231, 237, 74 S.Ct. 505, 509-10, 98 L.Ed. 660, 665-66 (1954); *see Allied Stores of Ohio* v. *Bowers*, 358 U.S. 522, 526-28, 79 S.Ct. 437, 440-42, 3 L.Ed. 2d 480, 484-86 (1959); *Charleston Ass'n* v. *Alderson*, 324 U.S. 182, 190-91, 65 S.Ct. 624, 629-30, 89 L.Ed. 857, 863-64 (1945); *Carmichael* v. *Southern Coal Co.*, 301 U.S. 495, 509-513, 57 S.Ct. 868, 872-74, 81 L.Ed. 1245, 1252-55 (1937).[6]

The purpose of the Richmond ordinance is to raise revenue by levying and collecting an occupation tax. The City Council determined that the taxpayer class should include all persons engaged in an occupation for profit, other than those who earn less than $3,100 or work less than 120 days per year and those who pay a license tax to the City. The class so established "rest[s] on real and not feigned differences" and has "relevance to the purpose for which the classification is made". There is no proof or even suggestion that the classification is "wholly arbitrary". The Richmond ordinance therefore satisfies the equal protection test laid down by the Supreme Court.

## III

In 1916 this Court struck down a Richmond ordinance that imposed a license tax on fifteen specified occupations *and on each business that could not, in the opinion of the committee on finance, be reached by the ad valorem system. Armour & Co.* v. *City of Richmond*, 118 Va. 217, 87 S.E. 609 (1916). The Court held "that the council of the city of Richmond was without authority to delegate to the finance committee the discretion to determine whether an undesignated business could or could not be reached by the *ad valorem* system * * * ". *Id.* at 221, 87 S.E. at 610.

In *Williams* v. *City of Richmond, supra*, the Court found the same vice in a later Richmond ordinance. Speaking of the vagueness of the ordinance, and again voicing concern about due process, the Court said:

---

[6] Like almost all equal protection cases, these cases involve alleged discrimination not because (as in the case before us) disparate persons are included in the class and taxed equally, but because of unequal treatment given to persons or items included in the class and taxed as members of that class, vis-á-vis (i) those not included in that class and not taxed at all or (ii) those not included in that class and taxed differently as members of another class.

"In the challenged section of the ordinance, what is meant by 'any person, firm, association, partnership, or corporation engaged in any business, occupation or profession?'. The household servant is certainly engaged in an occupation. This is also true of the housewife, the president of a wealthy corporation, and the postmaster. The street bootblack and the newsboy conduct a business. Music teachers and ministers follow a profession.

"If we consider 'what may be done' under the ordinance, as we must when we are testing its validity, those we have mentioned may be required to pay a license tax of $50 regardless of how trivial or serious their callings might be."

*Id.* at 486-87, 14 S.E.2d at 290.

Because of this uncertainty in the ordinance, the Court in *Williams* concluded that the imposition of a license tax on any business not specifically named in the ordinance rested "solely in the hands of the commissioner of the revenue".[7] *Id.* at 487, 14 S.E.2d at 290. The Court therefore held the *Armour* case controlling and struck down the *Williams* ordinance because of improper delegation of legislative authority.

The present Richmond ordinance was obviously drafted to meet the vagueness objection found in the *Williams* ordinance. Instead of imposing a tax upon persons engaged in any occupation in the City, as provided in the *Williams* ordinance, the present ordinance imposes a tax upon persons so engaged "for profit". The addition of the words for profit eliminates the housewife and fixes the taxpayer class as those who labor for wages or other income.

Moreover, in 1950, about nine years after the *Williams* decision, this Court veered away from the rule that a tax ordinance should be struck down because of vagueness or uncertainty. *Fallon Florist v. City of Roanoke,* 190 Va. 564, 58 S.E.2d 316 (1950). The Roanoke ordinance, imposing a tax upon purchasers "of any floral design", was attacked on the ground that certain taxpayer-litigants were unable to determine " 'when flowers ceased to be in their natural state and become so arranged as to constitute "floral designs" ' ". Rejecting the

---

[7] In the second paragraph of the *Williams* opinion, the Court referred to the fact that some of the litigants had been assured by the commissioner that no license tax was required of them, but that "in the latter part of 1939, contrary to his former assurance, the commissioner assessed each of them with a license tax under § 166 for 1939 and for the three previous years together with penalties and interest that are usually imposed upon those in default". *Williams v. City of Richmond, supra* at 482, 14 S.E.2d at 288.

contention that the Roanoke ordinance was invalid under the *Williams* decision, the Court said:

> "[T]his is a matter which merely involves the interpretation and application of the ordinance and does not establish its invalidity. In other words, the fact that one particular group or collection of flowers may not come within the terms of the definition of a 'floral design' does not impair the validity of the tax which is imposed upon the purchase of another group or collection which does come within the definition.
>
> "The same is true of the point made before us in the oral argument that it is difficult to determine in certain cases when a purchase is made within the city and when not. The fact that the ordinance may or may not apply to a purchase of flowers pursuant to an order by telephone, telegram or mail from a purchaser beyond the city limits to a vendor within the city limits, does not impair its validity with respect to a transaction which takes place within the city and to which the language of the ordinance clearly applies.
>
> "It is well settled that a statute is not fatally indefinite because questions may arise as to its applicability, or opinions may differ with respect to what falls within its terms, or because it is difficult to enforce. [Citing authorities.]
>
> "It is an elementary principle of constitutional law, to which we have frequently adverted, that the propriety, wisdom, necessity and expediency of legislation are exclusively matters for legislative determination. The only concern of the judiciary is whether a particular enactment is within the power of the legislative body and whether it is free from constitutional or legal impediment."

*Id.* at 589-90, 58 S.E.2d at 328-29.

In this case counsel for the Director of Finance contends that the Richmond ordinance is vague because (a) it purports to tax a person engaged "as an employee *or otherwise*", without specifying the meaning of "otherwise", (b) it purports to tax persons who work 120 days per year, without specifying how many work hours equal one day's work, and (c) it exempts persons who earn less than $3,100 per year, without specifying whether the reference is to gross or net earnings. Richmond, Va., Ordinance 69-157-147, July 14, 1969, n. 1 *supra.* And because of this vagueness counsel contends that the Rich-

mond ordinance improperly delegates legislative authority to the Commissioner of the Revenue.

Following the rule laid down in *Fallon Florist* v. *City of Roanoke, supra,* we reject these contentions. The meanings of the words "or otherwise" and of the 120-day work and the $3,100 earnings exemption can be properly determined by litigation if the need arises. As we said when a similar contention was made in another case, "it is unnecessary and improper in this case to attempt a general statement as to the applicability of the statute under all circumstances". *Avery* v. *Beale,* 195 Va. 690, 706, 80 S.E. 2d 584, 593 (1954).

*Writ awarded.*