# CIRCUIT COURT OF THE CITY OF RICHMOND

Board of Directors
of the Tuckahoe Ass'n, Inc.

v.

City of Richmond

## Case No. LB-3096-3

By Judge T. J. Markow

### September 18, 1997

This matter is before the court on cross-motions for Summary Judgment.

Plaintiff filed a Motion for Judgment on December 23, 1996, alleging that the City of Richmond's utility taxation scheme is violative of the equal protection clauses of the 14th Amendment to the U.S. Constitution and Article I, §§ 1 & 11, of the Constitution of Virginia. Plaintiff claims that the defendant's utility taxation scheme is illegal or invalid pursuant to Va. Code § 58.1-3984(A), thereby entitling it to monetary relief by this court. Plaintiff seeks approximately $30,000, the final amount to be based on a court-ordered accounting of amounts paid by plaintiff to defendant pursuant to the challenged taxation plan.

Plaintiff is the executive body of the Tuckahoe Association, a Virginia nonstock corporation organized pursuant to the Virginia Condominium Act, Va. Code §§ 55-79.39 to 55-79.103. The Tuckahoe Association membership consists of the owners of the sixty-eight individual residential units in the Tuckahoe condominium building. Each unit pays a share of costs associated with the gas and electrical service provided to the Tuckahoe Association; i.e., the individual owners are not billed separately by the utilities for their gas and electrical use. The Association purchases these utilities for the residents at a

"commercial" rate, as determined by the service provider. The building is serviced by a single electric utility service meter and two gas meters, one for domestic water and another for the gas-fired boiler.

Defendant is the City of Richmond, which is authorized to levy utility taxes on consumers of local utility service pursuant to Va. Code § 58.1-3814 and Richmond Code Art. V, § 27-152.1.

Plaintiff made several written requests to defendant seeking reimbursement of excess utility taxes. Plaintiff asserted that it was subject to a maximum monthly tax of five dollars per meter as a "residential" user, rather than the higher assessment accorded to "commercial" purchasers. The plaintiff's written reimbursement requests were rejected by the defendant. The City responded that utility taxes are to be assessed based upon the "purchaser's" classification rather than the end-user's categorization; i.e., Tuckahoe Association was viewed as a commercial entity rather than residential condominium units.

Under the defendant's "residential" utility taxation classification, each purchaser of electric and gas utility services was required to pay a tax of twenty-five percent on the first twenty dollars (i.e., a maximum of five dollars per month per utility service). Richmond Code Art. V, § 27-152 (repealed 1995). The residential tax rate for gas and electric service was reduced to twenty percent in 1995. Richmond Code Art. V, § 27-152.1 (adopted 1995).

Under the defendant's "commercial" classification, each purchaser of electric and gas utility services was required to pay a tax of twenty-five percent on the first six hundred and twenty five dollars, and five percent on any amount exceeding six hundred and twenty-five dollars. Richmond Code Art. V, § 27-152 (repealed 1995). In 1995 the commercial tax rate for electric service was reduced to twenty-four percent and four and one half percent, respectively. Richmond Code Art. V, § 27-152.1 (adopted 1995).

The utility tax is collected by the service provider (Virginia Power or City of Richmond Gas) based upon its classification of customers (residential or commercial). Neither the Virginia Code nor the Richmond Code defines the terms "residential" and "commercial." The Virginia Code states that the tax is to be assessed on the "consumer" or "customer" while the Richmond Code levies a charge on the "purchaser." For purposes of this discussion, the court will assume that these three terms are synonymous as applied to the defendant's ordinance. In effect, the defendant wholly relies on the customer classifications used by the "seller" or utility company in order to determine whether an entity will be taxed on a residential or commercial basis. In the instant case, the plaintiff is charged a "commercial" rate for its gas and electric utility service by Virginia Power and City of Richmond Gas. As the service

provider is tasked with collecting defendant's utility tax, the defendant has effectively applied a "commercial" (rather than residential) utility tax rate on the provision of gas and electric services to Tuckahoe.

A motion for summary judgment may be sustained only where no material facts are genuinely in dispute. Supreme Court of Virginia Rule 3:18. In other words, summary judgment is appropriate in those cases where the only dispute concerns a pure question of law. *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 5 (1954). The filing of cross-motions for summary judgment does not, in itself, resolve the factual issue or obviate the court's duty. *Town of Ashland v. Ashland Inv. Co.*, 235 Va. 150 (1988); *Central Nat'l Ins. Co. v. Virginia Farm Bureau Mut. Ins. Co.*, 222 Va. 353 (1981).

Neither party contends that summary judgment is inappropriate because there are material facts in dispute. The only dispute concerns the interpretation and application of the defendant's gas and electric utility tax provisions. Summary judgment is appropriate here.

Plaintiff alleges that defendant's tax policies amount to a violation of the equal protection clauses of the 14th Amendment to the U.S. Constitution and Article I, §§ 1 and 11, of the Constitution of Virginia . Equal protection challenges to economic legislation such as the defendant's tax scheme will be evaluated under rational basis review. *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 174-176 (1980). States and, by extension, local governments should be accorded substantial discretion in structuring internal taxation schemes and making categorical distinctions. *Williams v. Vermont*, 472 U.S. 14, 22 (1985) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359 (1973)). Further, the court should be reluctant to interfere with municipal policy decisions in this area. *Id.* (citations omitted).

Equal protection does not mandate identical treatment, rather it "only requires that the classification [contained in the statute or ordinance] rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary." *Cox Cable Hampton Roads v. City of Norfolk*, 242 Va. 394, 402 (quoting *Walters v. City of St. Louis*, 347 U.S. 231, 237 (1954)).

In the instant case, the defendant's residential and commercial classifications are *not* based on real differences, at least as such distinctions are delineated in the ordinance. Richmond Code §§ 27-152 and 27-152.1 have provided no guidance to utility service providers on distinguishing between

residential and commercial purchasers *for tax purposes.*[1] The utility company is forced to rely upon its own internal classifications. Consideration by the service provider of any criteria not contained in the defendant's ordinance is improper.

Although Tuckahoe Association is a Virginia corporation and easily susceptible to classification as a "commercial" purchaser by a service provider, the actual consumers of utility services on its premises are residential entities. Defendant must provide some means of reconciling these disparate classifications before delegating tax collection responsibilities to utility service providers.

Despite the absence of proper definitions to complement the utility tax ordinance, the court recognizes that a distinction between "residential" and "commercial" is relevant to defendant's goals of administrative efficiency and ease of application. Requiring utility providers to collect such taxes based on distinctive categories clearly aids the defendant with its fiscal responsibilities. However, in the absence of clear guidance for these utilities on how to exercise this delegated power, the disparate tax treatment of residential and commercial consumers is wholly arbitrary and should not stand.

In sum, plaintiff has provided clear and convincing evidence that subjecting commercial purchasers to a greater utility tax burden than residential consumers is arbitrary and unreasonable. "If the question of reasonableness is fairly debatable, [the court] will not substitute [its] judgment for that of the legislative body charged with the primary duty and responsibility of deciding the question." *Sheek v. City of Newport News*, 214 Va. 288, 290 (quoting *Martin v. City of Danville*, 148 Va. 247, 250 (1927)). As plaintiff has successfully rebutted the reasonableness of the defendant's commercial/residential classification, the court invalidates this utility taxation scheme on equal protection grounds.

Summary Judgment is hereby entered in favor of plaintiff. Counsel are requested to advise the court as to how they wish to develop the damages issue, as the final amount is to be based on a court determination of excess amounts paid by plaintiff to defendant pursuant to the challenged taxation plan.

---

[1] The court expressly refrains from evaluating the reasonableness or legitimacy of any *internal* guidelines used by the utility service providers in arriving at their customer *rate structure*. This letter opinion is limited to an equal protection analysis of the defendant's utility *tax classifications,* as applied by the service providers in conjunction with their own internal guidelines.

November 13, 1997

*Order*

Memoranda were received regarding the defendant's Motion for Reconsideration. For the reasons stated below, the Motion for Reconsideration is overruled.

Motions for Reconsideration are not favored. In articulating the reasons that such motions are disfavored, the Supreme Court of Virginia stated:

> the trial courts labor under increasing burdens, and judicial economy requires that litigants have one, but only one, full and fair opportunity to argue a question of law. The time required to hear a litigant reargue a question a second time must be taken from other litigants who are waiting to be heard. For this reason, motions to reconsider are not favored.

*Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 403, 337 S.E.2d 744, 749 (1985) (trial court did not abuse its discretion by refusing to reconsider its ruling and denying motion for leave to amend).

In the instant case, both parties moved for summary judgment. In its motion, the defendant implied to the court that there were no material facts in dispute; the only issues were pure questions of law, i.e., whether the City's utility tax ordinance was illegal or invalid such that the plaintiff was entitled to a refund of excess tax assessments or that it was valid and no refund was due. Nonetheless, the defendant now asks the court to consider various new factual and legal contentions in its Motion for Reconsideration. The court will initially address the two main themes.

First, the City argues that the plaintiff has suffered no injury and has no standing. *See Defabio v. County Sch. Bd. of Fairfax Co.*, 199 Va. 511, 100 S.E.2d 760 (1957); *City of Falls Church v. Shanklin*, 205 Va. 227, 135 S.E.2d 773 (1964). The court recognizes that objections to subject matter jurisdiction may be raised at any time and are not waivable. *Owuso v. Commonwealth*, 11 Va. App. 671, 401 S.E.2d 431 (1991). However, the standing question in this case is intertwined with the interpretation and application of the disputed ordinance itself (a mixed question of fact and law).

The court refrained from expressly endorsing *any* of the varying interpretations offered by the parties, e.g., whether the tax applies to each household/end-user on an individual basis or the condominium association/purchaser as a single entity. The ordinance was held invalid by

this court on equal protection grounds. Plaintiff stated in its Motion for Judgment that it was injured because its classification as a "commercial" rather than a "residential" utility service purchaser resulted in a higher tax bill. This was premised on the fact that the condominium was taxed as one entity for "commercial" purposes with one electric meter and two gas meters, even though it was composed of sixty-eight separate "residential" units drawing services from these common meters.

The standing argument proffered by the defendant is dependent upon the resolution of a mixed question of fact and law that was not decided by this court on Summary Judgment. "How" the tax is to be assessed will not and cannot be decided at this stage. As this court's letter opinion of September 18, 1997, indicated, this issue was left to be determined by an accounting. Only then can the court determine whether the plaintiff has gained a financial windfall or suffered an injury. The Motion to Reconsider will not be sustained on the basis of standing.

Second, the defendant argues that allowing the utility service providers to decide customer classifications without legislative guidance is permissible. The City cites two cases for this proposition: *City of Richmond v. Fary*, 210 Va. 338, 171 S.E.2d 257 (1969), and *Ours Properties, Inc. v. Ley*, 198 Va. 848, 96 S.E.2d 754 (1957). The *Fary* case concerned a refusal by the City's Director of Finance to enforce a Richmond occupation tax ordinance, citing equal protection concerns. The Court upheld the ordinance, stating that the taxpayer classification " '[rests] of real and not feigned differences' and has 'relevance to the purpose for which the classification is made.' There is not proof or even suggestion that the classification is 'wholly arbitrary'." *Fary*, 210 Va. at 344, 171 S.E.2d at 262.

In contrast to the occupation tax in *Fary*, the Richmond utility tax in this case is "fatally indefinite," it is literally devoid of any means to determine how *any* utility service customer should be categorized by the service provider for tax purposes. This is not a matter of whether it is difficult to determine whether some purchasers are subject to the tax scheme while others are exempt (as was alleged by the defendant in *Fary*); as written, each and every customer classification is based upon utility company guesswork and internal guidelines foreign to the ordinance itself. Although the *Fary* Court suggests that general statements as to the applicability of a statute under all circumstances are not the responsibility of the bench, the ordinance disputed by the parties here is devoid of any guidance whatsoever for those charged with determining whether to collect taxes based upon a "residential" or "commercial" classification. Case-by-case interpretation of the these terms

would lead to an endless maze of repetitive litigation, whereas legislative amendment would provide a one-stop remedy here.

*Ours Properties* concerned the discretion exercised by a city building inspector when issuing building permits pursuant to a Falls Church zoning ordinance. The Court found that the evaluation of "matters of detail" was properly left to administrative discretion rather than legislative determination. *Ours Properties*, 198 Va. at 852, 96 S.E.2d at 757. The disputed terms had a "well understood meaning" and were not ambiguous. *Id.* at 853, 96 S.E.2d at 758. In the instant case, the terms "residential" and "commercial" do not have a clear meaning. Given the fact that the enabling statute (Va. Code § 58.1-3814) refers to "consumers" and "customers" of utility service whereas the City's ordinance (Richmond Code Art. V, § 27-152.1) refers to "purchasers,"[2] the confusion stemming from these multiple labels only muddies the definitions of "residential" and "commercial" left to be determined by the utility providers. As the consumers (the residents) differ from the actual purchaser (the condominium association), some basis for differentiating between the tax classifications should exist in the defendant's ordinance.

Both *Ours Properties* and *Fary* concerned the exercise of power by government officials pursuant to city ordinances. The instant case involves the delegation of administrative authority to utility service providers, entities presumably less-skilled in the intricacies of tax collection than the City of Richmond. Relying upon the taxation expertise of Virginia Power and the City's Department of Public Utilities (the gas supplier) is a far cry from trusting the interpretive talents inherent to a Director of Finance or a local building inspector in the above-cited cases.

The Supreme Court of Virginia has invalidated numerous statutes and ordinances which delegated the power of decision to administrative officers without clear standards. *See, e.g.,* *Andrews v. Board of Supervisors of Loudoun County*, 200 Va. 637, 107 S.E.2d 445 (1959) (striking zoning ordinance for failure to define key terms and offering the opportunity for arbitrary action and discrimination); *Chapel v. Commonwealth*, 197 Va. 406, 89 S.E.2d 337 (1955) (struck down legislation for failing to fix any standard to direct and guide agency in making rules). The instant case is analogous. The absence of guidance available for utility service providers administering the City's taxation scheme is a fatal defect. The Motion to Reconsider will not be sustained based on the defendant's contention that this delegation is permissible.

---

[2] The court assumed in its letter opinion that these terms were synonymous; utility service providers should not have to decide such ambiguities without guidance.

The defendant also contends that the plaintiff may not maintain inconsistent positions for purposes of utility service classification. As the defendant pointed out in its Memorandum in support of this motion, the classification of customers for the purpose of assessing *service cost* is left to the sound discretion of the utility providers, under the watchful eyes of the State Corporation Commission. The classification of customers for purposes of collecting *utility taxes* is delegated to the utility providers, without sufficient guidance from the City. The two assessments are separate and distinct, even though they are collected by the same entities. The validity of the former categorization is not before the court; the basis for the latter assessment has been invalidated on equal protection grounds. The defendant itself appears to be a victim of gross inconsistency, as the City is presenting this newfound factual contention for the first time on Reconsideration after having moved for summary judgment and therefore asserting that there were no material facts in dispute.

Contrary to the defendant's contention that the court has granted relief not requested by the plaintiff, the Motion for Judgment specifically alleged that the City's tax assessment was violative of equal protection. The relief granted substantially accords with the case as made in the pleadings. The defendant certainly had notice that its ordinance was subject to constitutional challenge. The remaining arguments are overruled without discussion.

It is, therefore, ordered that the motion for reconsideration is overruled. Defendants' objections are noted.